VESELENAK v SMITH

Docket No. 65534. Argued December 1, 1981 (Calendar No. 11).—
    Decided December 7, 1982.

Anna Veselenak and Steve Veselenak, her husband, brought an
    action in Genesee Circuit Court for medical malpractice against
    Sidney E. Smith, M.D., Kong C. Choi, M.D., and McLaren
    General Hospital. During surgery performed by Dr. Smith,
    assisted by Dr. Choi, at McLaren, a hemostat was left in Anna
    Veselenak's abdomen. The court, Donald R. Freeman, J., en-
    tered judgment on a jury verdict for the plaintiffs, including
    compensatory and exemplary damages against Dr. Smith. The
    Court of Appeals, D. F. Walsh, P.J., and Bashara and Glaser,
    JJ., affirmed in an unpublished opinion per curiam (Docket No.
    44941). Defendant Smith appeals.

    In a unanimous opinion by Chief Justice Fitzgerald, the
    Supreme Court *held:*

    In this case, the award of exemplary damages for injury to
    feelings is duplicative of the award of ordinary damages for
    mental distress and anguish. The case is remanded for a new
    trial limited to the question of the amount of ordinary damages
    suffered by Anna Veselenak because of Dr. Smith's malpractice.

    1. Exemplary damages were formerly called punitive dam-
    ages and were awarded as punishment for injury to feelings.
    Actual damages were awarded to compensate for economic loss,
    but seemed to preclude an award of additional compensation
    for non-economic loss. Where actual damages were not prova-
    ble, but mental injury was certain, exemplary damages became
    available. Proof of actual damages is no longer a bar to an
    award of exemplary damages, but actual damages now include
    compensation for mental distress and anguish.

    2. The conduct necessary to support an award of exemplary
    damages must be voluntary and must be malicious or so willful
    and wanton as to demonstrate a reckless disregard of the
    plaintiff's rights. As a practical matter, the conduct which has

REFERENCES FOR POINTS IN HEADNOTES
[1] 22 Am Jur 2d, Damages §§ 249, 250.
[2] 22 Am Jur 2d, Damages § 197.

been found sufficient to justify an award of exemplary damages has involved an intentional act. Because of the mental element, negligence is not sufficient. In this case, it is clear from the instructions to the jury that the injuries to be compensated by exemplary damages were Anna Veselenak's pain, suffering, mental distress, and anguish, injuries for which the jury was also instructed she could be given ordinary damages. The giving of the exemplary damages instruction permitted double compensation.

Reversed and remanded.

1. DAMAGES — EXEMPLARY DAMAGES — NEGLIGENCE.

An intentional and malicious act is necessary to justify an award of exemplary damages; negligence is insufficient.

2. DAMAGES — EXEMPLARY DAMAGES.

The availability of ordinary damages for mental distress and anguish in an action for medical malpractice makes exemplary damages for injury to feelings redundant.

*Conlin, Conlin & McKenney* (by *John W. Conlin* and *Allen J. Philbrick)* for the plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *John P. Jacobs),* for defendant Smith.

Amici Curiae:

*Baxter & Hammond* (by *Michael D. Wade)* for Michigan Defense Trial Counsel, Inc.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Steven G. Silverman)* for the Michigan Trial Lawyers Association.

FITZGERALD, C.J. This is an unusual medical malpractice action. It owes its uniqueness to a jury award of $350,000 for exemplary damages. Thus, the issue before us is whether the availability of ordinary damages for mental distress makes exemplary damages for injury to feelings redundant.

# I

In 1972, Anna Veselenak was referred to defendant Dr. Sidney Smith, a general surgeon, for gastrointestinal bleeding and diverticulosis. Surgery was performed. Her condition proved chronic and, in August, 1974, Mrs. Veselenak returned to Dr. Smith's office complaining of increased abdominal pain and bloody stools. Arrangements were made to admit her to McLaren General Hospital. When she was admitted approximately one week later, her condition had deteriorated significantly. Emergency surgery was performed by Dr. Smith, assisted by defendants Dr. Choi and Dr. Nobel, a surgical resident employed by defendant McLaren General Hospital.

During the surgical procedure, numerous hemostats or clamps were used. One was not retrieved. It remained in Mrs. Veselenak's abdominal cavity until September, 1976, when it was removed by other physicians whom she consulted.

After Mrs. Veselenak's discharge from McLaren General, she embarked on a two-year course of treatment with Dr. Smith. She complained increasingly of abdominal pain, diarrhea, and inability to sleep or eat. Dr. Smith assured and reassured her that this symptomatology was not inconsistent with normal post-operative progress after such major surgery. He prescribed medication for the pain.

Finally, in October, 1975, Dr. Smith prescribed abdominal x-rays to demonstrate to Mrs. Veselenak that she did not have cancer and thus counter her increased depression. These x-rays revealed the presence of a 6-1/2-inch-long hemostat. Confir-

matory x-rays were taken a month later. The radiologist immediately notified Dr. Smith by phone, letter following.

Dr. Smith testified that he informed Mrs. Veselenak of the presence of the hemostat two days later. This both Mrs. Veselenak and her daughter (who was present at every appointment) emphatically denied. They testified that they were advised in August, 1976 of the presence of a small hemostat and that immediate removal was unwise.

Dr. Smith further testified that he wished to treat conservatively in order to observe what effects, if any, the hemostat was having on Mrs. Veselenak's health. He continued her regimen of pain medication.

The surgeon who recovered the hemostat in September, 1976, testified that he would have counseled immediate removal after discovery in late 1975. He noted that the hemostat had perforated her small bowel, causing a chronic if localized infection, and was protruding into her kidney. He stated that she soon would have died had the hemostat not been removed and that, following the 1976 surgery, she made a normal recovery.

The jury (after a lengthy emotion-charged trial) returned verdicts in favor of plaintiffs totaling $420,000. Plaintiff Anna Veselenak was awarded $10,000 each from Dr. Choi and McLaren General Hospital. In addition, the jury awarded her $15,-000 for compensatory and $350,000 for exemplary damages from Dr. Smith. Plaintiff Steve Veselenak received nothing on his claim for loss of consortium as to Dr. Choi and McLaren General Hospital, but prevailed as to Dr. Smith in the amount of

$35,000. Dr. Smith (hereinafter defendant) appeals the jury verdicts against him.

The trial court denied defendant's motions for a new trial and for a *remittitur.* The Court of Appeals affirmed in an unpublished opinion per curiam. We granted leave to appeal and directed the parties to include among the issues to be briefed whether exemplary damages should be recoverable in a malpractice or negligence action. 411 Mich 973 (1981).

## II

Defendant argues that exemplary damages should not have been recoverable in this case. Defendant's argument proceeds along two lines. First, defendant cites *Kelly v Chillag,* 381 F2d 344 (CA 4, 1967), and *Noe v Kaiser Foundation Hospitals,* 248 Or 420; 435 P2d 306 (1967), for the proposition that concealment of malpractice from a patient by the physician who committed the malpractice is a censurable lack of candor but not sufficient to justify the award of punitive damages. Second, defendant argues that a medical practitioner, as a healer, should not be subject to any charges of malice arising out of the doctor-patient relationship. This policy argument is based on the idea that no physician is presumed to be a malicious adversary of his patient.

We agree that exemplary damages should not have been awarded, but not for the reasons defendant offers. The argument that concealment, standing alone, is not sufficient to support an award of exemplary damages is unpersuasive. *Kelly v Chillag, supra,* cites no authority and has been cited by none. *Noe, supra,* does not involve

concealment in the face of a clear duty to disclose, a state of facts which the jury in the instant case may have found and which the evidence adduced at trial clearly supports. The argument that recitation of the Hippocratic oath should raise a conclusive presumption of good faith, thus insulating physicians from any charges of malicious conduct arising out of the physician-patient relationship, flies in the face of legal accountability.

As the analysis which follows will make clear, we hold that exemplary damages should not have been awarded in this case because we conclude that the award of exemplary damages for injury to feelings is duplicative of the award of ordinary damages for mental distress and anguish. We perceive no principled reason for allowing a double recovery for the same injury. As a result of our decision on this issue, we find it unnecessary to reach the issue stated in the grant of leave to appeal. We reverse the judgment of the Court of Appeals and remand for a new trial limited to the question of the amount of ordinary damages plaintiffs suffered as a result of defendant's malpractice. *Winchester v Meads,* 372 Mich 593, 599; 127 NW2d 337 (1964). In light of our disposition of this case, we do not address defendant's other arguments.

### III

This Court has grappled with the problem of allowing or of disallowing the award of exemplary (formerly called punitive) damages in numerous cases over the last 120 years. Although systematic development of this area may seem to be the

exception,[1] certain consistent principles have emerged.

In 1868, after a discussion of the policy reasons supporting the award of exemplary damages, the Court concluded that the only "proper application of damages beyond those to person, property or reputation, is to make reparation for the injury to the feelings of the person injured". *Detroit Daily Post Co v McArthur,* 16 Mich 447, 453 (1868). Nevertheless, the rationale persisted that punishment was a legitimate basis for the award of these unusual damages for injury to feelings. It was finally interred by two cases written by Justice COOLEY. In *Watson v Watson,* 53 Mich 168; 18 NW 605 (1884), and in *Stilson v Gibbs,* 53 Mich 280; 18 NW 815 (1884), Justice COOLEY examined the classic common-law arguments opposing the award of exemplary damages for purposes of punishment, found them convincing, and articulated the idea that exemplary damages are merely a class of compensatory damages. These two "rules" summarized by the phrase 'compensation for injury to feelings', retain their vitality today. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980); *Ray v Detroit,* 67 Mich App 702; 242 NW2d 494 (1976).

A close reading of the early exemplary damages cases also suggests that these unusual damages may have been used to supply a remedy for mental injury not otherwise recognized. Actual damages compensated for economic loss, but not for non-economic loss. In addition, the award of actual damages seemed to preclude the award of addi-

[1] See Michael Wade's excellent treatise on punitive damages in The Michigan Law of Damages (Michael Wade, ed, Ann Arbor: The Institute of Continuing Legal Education, 1978).

tional compensation for non-economic loss. *Warren
v Cole,* 15 Mich 265 (1867); *Hyatt v Adams,* 16
Mich 180 (1867).[2] Assuming actual damages were
not provable but mental injury certain, exemplary
damages became available to compensate the in-
jured party. *Fay v Swan,* 44 Mich 544; 7 NW 215
(1880).

As proof of actual damages is no longer a bar to
the award of exemplary damages, so too actual
damages, where properly pled, now include com-
pensation for shame, mortification, mental pain
and anxiety, *Beath v Rapid R Co,* 119 Mich 512; 78
NW 537 (1899), and for annoyance, discomfiture,
and humiliation, *Grenawalt v Nyhuis,* 335 Mich
76; 55 NW2d 736 (1952). In short, actual damages
now include compensation for mental distress and
anguish.

## IV

The resolution of the intellectual and legal ques-
tions underpinning the award of exemplary dam-
ages was stated in the context of a finite number
of factual patterns. Much of the work of the Court
since then has been to determine the type of
conduct which would give rise to the threshold of
injured feelings necessary to support an award of
exemplary damages.

This Court has held that the act or conduct
must be voluntary. *Detroit Daily Post Co v Mc-
Arthur, supra.* This voluntary act must inspire
feelings of humiliation, outrage, and indignity.
*Kewin v Massachusetts Mutual Life Ins Co, supra.*
The conduct must be malicious or so willful and
wanton as to demonstrate a reckless disregard of

_____

[2] *Id.*

plaintiff's rights. *Wise v Daniel,* 221 Mich 229; 190 NW 746 (1922); *McFadden v Tate,* 350 Mich 84; 85 NW2d 181 (1957); *Bailey v Graves,* 411 Mich 510; 309 NW2d 166 (1981).

As a practical matter, the conduct we have found sufficient to justify the award of exemplary damages has occurred in the context of the intentional torts, slander, libel, deceit, seduction, and other intentional (but malicious) acts. Due to the required mental element, negligence is not sufficient to justify an award of exemplary damages.[3] The parties to this action and the amici curiae do not urge otherwise.

In the instant case, plaintiffs argue that defendant's conduct of alleged concealment is the sort of grievous act which will support an award of exemplary damages. Assuming this argument is correct, the question becomes: what injury is sought to be compensated?

The trial court instructed the jury that plaintiff Anna Veselenak could be compensated for pain, suffering, and mental anguish caused by defendant's violations of the applicable standard of care. The court further instructed that exemplary damages were awardable to compensate Anna Veselenak for her injured feelings. Such damages, the jury was informed, flow from conduct which "enhances * * * pain, suffering, humiliation, mental and physical anguish or disgrace." After a discussion with counsel about the instructions given, the court recalled the jury and explained that an award of exemplary damages is to compensate for "actual pain * * * suffering, embarrassment, [and] humiliation".

---

[3] Accord: Prosser, Torts (4th ed), § 2, pp 9-11.

From the instructions given, it is clear that the injury sought to be compensated by defendant's alleged concealment is Anna Veselenak's pain, suffering, mental distress and anguish. It is equally clear that, if the jury deliberated as instructed, it also considered Anna Veselenak's pain, suffering, mental distress and anguish as part of her claim for ordinary damages. Thus, our analysis in the preceding section and the record before us both support the idea that the giving of an exemplary damages instruction permitted Anna Veselenak to be doubly compensated for one injury.

Amicus curiae Michigan Trial Lawyers Association contends that ordinary damages and exemplary damages are not redundant. It maintains that a distinction may be drawn between "mental distress intrinsic to the injury itself (no matter how it occurred) and mental distress emanating from the manner in which the injury occurred". In addition, it claims that ordinary damages for shame and mortification and exemplary damages for humiliation and indignity are compensating "distinct wrongs".

These distinctions are, at least, legally unsound. Semantic niceties aside, juries are not asked to differentiate between mental states, such as shame, mortification, humiliation and indignity. Juries are asked to compensate mental distress and anguish, which flows naturally from the alleged misconduct and may be described in such terms as shame, mortification, humiliation and indignity. In addition, if the plaintiff is being compensated for *all* mental distress and anguish, it matters not whether the source of the mental

distress and anguish is the injury itself or the way in which the injury occurred.

## V

Defendant is entitled to instructions which do not doubly compensate plaintiff for the same injury, her mental distress and anguish. Accordingly, we reverse and remand for a new trial limited to the question of the amount of ordinary damages plaintiff suffered due to defendant's malpractice.

KAVANAGH, WILLIAMS, LEVIN, COLEMAN, and RYAN, JJ., concurred with FITZGERALD, C.J.

The late Justice BLAIR MOODY, JR., took no part in the decision of this case.