GREEN v EVANS

Docket No. 72004. Submitted June 11, 1984, at Lansing. Decided May
    24, 1985.
  C. Merle Dixon sold his 125-acre farm to William S. Evans, who
    was Dixon's attorney. Subsequently, Phillip Green, who had
    been appointed partial conservator of the elderly Dixon's estate
    by the probate court, filed an action in Washtenaw Circuit
    Court against William S. Evans and his wife, Katherine D.
    Evans. Plaintiff alleged that William S. Evans: (1) caused Dixon
    to sell the farm at too low a price; (2) caused Dixon to sell the
    farm without a reservation of a right to future profits from the
    farm, including royalties for gravel; (3) deprived Dixon of
    higher gravel royalties; and (4) misappropriated funds from a
    trust bank account of which Mr. Evans was trustee. Following
    a trial, the jury found Mr. Evans was professionally negligent,
    had breached his fiduciary duties, and had exerted undue
    influence on Dixon. The trial court, George E. Montgomery, J.,
    entered a judgment imposing joint and several liability against
    defendants for pecuniary damages of $398,981 for professional
    negligence, and liability against Mr. Evans only for exemplary
    damages of $300,000 for breach of fiduciary duty or undue
    influence. Defendants appealed.
    The Court of Appeals *held:*
    1. The special verdict form carefully segregated pecuniary
    damages due to professional negligence from exemplary dam-
    ages for Dixon's humiliation, embarrassment, and sense of
    outrage resulting from the breach of fiduciary duty or the
    exercise of undue influence. It was sufficiently clear from the
    instructions and the special verdict form that the jury did not
    doubly compensate Dixon for the same mental injury.
    2. Exemplary damages were properly recoverable by plaintiff

REFERENCES
Am Jur 2d, Appeal and Error §§ 123, 126, 640, 641, 851.
Am Jur 2d, Damages §§ 195, 236, 237, 249-253, 299, 310, 345, 346.
Am Jur 2d, Duress and Undue Influence §§ 43-49.
Am Jur 2d, New Trial §§ 212, 213.
See the annotations in the Index to Annotations under Additure
    and Remittitur; Appeal and Error; New Trial; Punitive Damages;
    Undue Influence.

and the trial court's instructions on exemplary damages were correct.

3. Plaintiff presented sufficient proof of Dixon's humiliation, embarrassment or sense of outrage to enable the jury to reasonably conclude that Dixon was entitled to exemplary damages.

4. The trial court adequately instructed the jury that the presence or absence of independent legal counsel was merely a factor to be considered in deciding whether Mr. Evans had exerted undue influence on Dixon.

5. The trial court did not abuse its discretion in denying defendants' motion for a new trial, after ruling that the verdict with regard to undue influence or breach of fiduciary duty was not against the great weight of the evidence.

6. The trial court did not abuse its discretion in denying defendants' motion for remittitur of the pecuniary and exemplary damage awards.

7. The question whether the trial court properly instructed the jury regarding credit to be given to defendants for any improvements made to the farm after its sale was made moot by the award of pecuniary damages. Pecuniary damages included damages which accrued as a result of the sale, but excluded any damages that would indicate any post-sale benefits to Dixon for any improvements made by defendants.

8. Nothing in the record suggested that Mrs. Evans owed any duty to Dixon. No basis, therefore, exists for imposing liability on Mrs. Evans for professional negligence and the trial court erred in denying Mrs. Evans' motion for a new trial on the issue of her liability.

Affirmed, except that judgment against Mrs. Evans was reversed.

CYNAR, J., dissented in part. He agreed that the trial court erred in failing to grant a new trial to Mrs. Evans. However, he would grant a new trial to Mrs. Evans with instructions to permit plaintiff to amend the pleadings if needed in proceeding with a new trial so as not to impede the enforceability of the judgment against Mr. Evans.

OPINION OF THE COURT

1. DAMAGES — EXEMPLARY DAMAGES.

An award of exemplary damages is justifiable only where it is first shown that the defendant's conduct was malicious, or so wilful and wanton as to demonstrate a reckless disregard of the plaintiff's rights; mere negligence is insufficient.

2. DAMAGES — EXEMPLARY DAMAGES.

    Exemplary damages are recoverable as compensation to the plaintiff, not as punishment of the defendant.

3. DAMAGES — EXEMPLARY DAMAGES — EVIDENCE.

    A plaintiff who seeks exemplary damages for humiliation, embarrassment or sense of outrage arising from the defendant's conduct need not present direct evidence of mental injury, but need only present evidence indicating that such mental injury flows naturally from the nature of the defendant's conduct.

4. ATTORNEY AND CLIENT — UNDUE INFLUENCE — INDEPENDENT LEGAL ADVICE — EVIDENCE.

    Evidence that independent legal advice was or was not received by a client upon whom undue influence was allegedly exercised by his attorney is an evidentiary factor which may be weighed, along with other evidence, in determining whether undue influence was exercised.

5. NEW TRIAL — MOTIONS AND ORDERS.

    The granting or denial of a motion for a new trial is within the sound discretion of the trial court, which must not substitute its judgment for that of the jury; where there is competent evidence to support the verdict and where the jury's finding was not against the overwhelming weight of the testimony, the verdict should not be set aside.

6. NEW TRIAL — APPEAL — MOTIONS AND ORDERS.

    An appellate court will not interfere with a trial court's decision on a motion for a new trial absent an abuse of discretion.

7. APPEAL — REMITTITUR.

    A trial judge's order of remittitur should not be reversed on appeal unless the trial judge abused his discretion.

8. DAMAGES — MONEY DAMAGES — MODE OF COMPUTATION — APPEAL.

    A verdict for money damages should not be set aside on appeal because the mode of computation utilized by a jury in assessing damages cannot be determined, so long as the award is within the range of evidence.

*Harris, Lax, Gregg & Guenzel* (by *Robert J. Harris*), and *Hooper, Hathaway, Price, Beuche & Wallace* (by *Charles W. Borgsdorf*), for Phillip Green.

*Collins, Einhorn & Farrell, P.C.* (by *Clayton F. Farrell* and *Noreen L. Slank*), for William S. Evans.

*Booth, Patterson, Lee, Karlstrom & Steckling* (by *Parvin Lee, Jr.*), for Katherine D. Evans.

Before: V. J. Brennan, P.J., and Cynar and E. F. Oppliger,[*] JJ.

Per Curiam. Attorney William S. Evans (hereinafter defendant) and his wife, Katherine D. Evans, appeal as of right from a December 30, 1982, judgment entered by the circuit court on a jury verdict finding professional negligence, beach of fiduciary duty, and undue influence. The judgment imposed joint and several liability against defendants for pecuniary damages in the amount of $398,981 for professional negligence, and liability against defendant William S. Evans only for exemplary damages in the amount of $300,000 for beach of fiduciary duty or undue influence.

Phillip Green (hereinafter plaintiff) is the partial conservator of the Estate of C. Merle Dixon, a person adjudged by the probate court to be in need of a conservator for the sole purpose of bringing this lawsuit.

The cause of action arose out of defendant's purchase of a 125-acre farm from his client, Dixon, in March, 1976. Plaintiff claimed a right to recover for the conduct of defendant William S. Evans (1) which allegedly caused Dixon to sell the farm for too low a price, (2) which allegedly caused Dixon to sell the farm without a reservation of a right to future profits from the farm, including gravel royalties, (3) which allegedly deprived Dixon of higher gravel royalties from Holloway Sand and

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

Gravel, and (4) in allegedly misappropriating funds from a trust bank account of which defendant was trustee. Further facts will be discussed where relevant to the issues raised.

I. WERE EXEMPLARY DAMAGES AVAILABLE TO PLAINTIFF AND WAS THE INSTRUCTION ON EXEMPLARY DAMAGES CORRECT?

Question 9 and 10 of the special verdict returned by the jury stated:

> Question <u>Number</u> <u>Nine</u>: Was Mr. Evans' breach of fiduciary duty and/or exercise of undue influence such as to entitle Dr. Dixon to exemplary damages for such humiliation, embarrassment, and sense of outrage as may have been proximately caused by it?
> Answer: <u>Yes</u> (yes or No)
> Question <u>Number</u> <u>Ten</u>: What is the total amount of exemplary damages Dr. Dixon is entitled to receive for such humiliation, embarrassment, and sense of outrage?
> Answer: <u>$300,000.00</u>.

The trial court gave the following instruction on exemplary damages:

> If you find for the Plaintiff, you may consider the question of exemplary damages. Exemplary damages are compensation to the Plaintiff for humiliation, embarrassment and a sense of outrage as a result of the Defendant's actions. A right to recover exemplary damages is not to punish the Defendant, but arises out of the acts by the Defendant. Such exemplary damages only are recoverable if the Plaintiff has proven by a preponderance of the evidence, malice, willful and wanton misconduct or negligence so great as to indicate reckless disregard of the rights of another. If the Plaintiff

has not proven that type of conduct on the part of the Defendant, the Plaintiff may not recover exemplary damages.

Defendant did not object to the instruction at trial, although he did challenge it in a motion for a new trial.

Defendant first argues, based on *Veselenak v Smith,* 414 Mich 567; 327 NW2d 261 (1982), that exemplary damages were not available to plaintiff. We do not agree.

*Veselenak* involved a medical malpractice action in which the defendant doctor left a hemostat in the plaintiff's abdominal cavity during an operation. The defendant allegedly concealed the hemostat's presence from the plaintiff for several months after it was discovered through x-rays. The jury returned a verdict of $15,000 compensatory and $350,000 exemplary damages against the doctor. The Supreme Court found it unnecessary to decide whether exemplary damages are recoverable in a medical malpractice action. Rather, the Court held that exemplary damages should not have been awarded because "the award of exemplary damages for injury to feelings is duplicative of the award of ordinary damages for mental distress and anguish." 414 Mich 572.

In *Veselenak* the jury was instructed that ordinary damages could include compensation for pain, suffering, and mental anguish caused by the defendant's breach of the applicable standard of care. In addition, the jury was told that exemplary damages were awardable to compensate the plaintiff for her injured feelings. The Court concluded that, since ordinary damages included compensation for mental distress and anguish, the exemplary damage instruction permitted double compensation for a single injury. The Court therefore

reversed and remanded for a new trial limited to the question of the amount of ordinary damages suffered by the plaintiff.

*Veselenak* must be distinguished from the instant case because here the court used a special verdict form which carefully segregated pecuniary damages due to defendant's professional negligence from exemplary damages for humiliation, embarrassment, and sense of outrage resulting from defendant's breach of fiduciary duty or exercise of undue influence. It is sufficiently clear from the instructions and the special verdict form that the jury did not consider mental injury in awarding pecuniary damages for professional negligence. The instruction on exemplary damages did not permit double recovery for a single injury and was therefore permissible. Defendant's contention that exemplary damages were not awardable because this was essentially a malpractice action is not supported by the *Veselenak* decision or other Michigan authority.

Defendant also contends that the instruction quoted above improperly permitted an award of exemplary damages based on negligent conduct. Defendant did not object to the instruction at trial, which precludes reversal on this issue absent manifest injustice. See GCR 1963, 516.2, now MCR 2.516(C).

In *Veselenak, supra,* p 575, the Court noted that mere negligence is not sufficient to justify an award of exemplary damages. Rather, the "conduct must be malicious or so wilful and wanton as to demonstrate a reckless disregard of plaintiff's rights." *Veselenak, supra,* pp 574-575.

In this case the court's instruction, based on *Bailey v Graves,* 411 Mich 510; 309 NW2d 166 (1981), stated in part:

Such exemplary damages only are recoverable if the Plaintiff has proven by a preponderance of the evidence, malice, willful and wanton misconduct or negligence so great as to indicate reckless disregard of the rights of another.

The instruction required proof of wrongful conduct which is "so great as to indicate reckless disregard of the rights of another." This qualifying phrase raises the standard of proof so that the instruction does not permit an award based on mere negligence. Although it would be better, to avoid any possible confusion, to delete the reference to negligence, we hold that the instruction complied with *Veselenak* and *Bailey*.

Defendant also argues that *Burnett v City of Adrian,* 414 Mich 448; 326 NW2d 810 (1982), released after the trial in this case, changes the law concerning wilful and wanton misconduct and renders the exemplary damages instruction in this case erroneous so as to require reversal. Defendant's argument based on *Burnett* is without merit and warrants no discussion.

II. WAS THERE SUFFICIENT EVIDENCE OF HUMILIATION, EMBARRASSMENT, OR SENSE OF OUTRAGE TO SUPPORT THE EXEMPLARY DAMAGES AWARD?

Defendant argues that plaintiff failed to present sufficient proof of humiliation, embarrassment or sense of outrage. He asserts that the award of exemplary damages was impermissibly based on the jury's own sense of outrage rather than on an injury suffered by Dixon.

In Michigan, exemplary damages are recoverable as compensation to the plaintiff and not as punishment of the defendant. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419; 295

NW2d 50 (1980). "An award of exemplary damages is proper if it compensates a plaintiff for the 'humiliation, sense of outrage, and indignity' resulting from injustices 'maliciously, wilfully and wantonly' inflicted by the defendant." *Kewin, supra,* p 419, quoting *McFadden v Tate,* 350 Mich 84, 89; 85 NW2d 181 (1957). The theory supporting exemplary damages is that the reprehensibility of the defendant's conduct intensifies the injury and justifies the award of additional compensation for the harm to the plaintiff's feelings. *Kewin, supra,* p 419.

Direct evidence of an injury to the plaintiff's feelings is not essential. Rather, the question is whether the mental suffering and injury to feelings are natural and proximate in view of the nature of the defendant's conduct. See *Wise v Daniel,* 221 Mich 229, 234; 190 NW 746 (1922), quoting *Rogers v Bigelow,* 90 Vt 41; 96 A 417 (1916).

Although the present case, unlike *Wise,* involves no physical injury, we believe that mental suffering and injury to feelings can be said to flow naturally from the nature of defendant's acts. The jury heard the testimony and could have reasonably concluded that Dixon was essentially cheated out of his home, farm, and gravel royalties, and forced to live his remaining years in near poverty. Although the elderly Dixon was not able to express his feelings well on the witness stand, we find that a jury could reasonably have concluded that he suffered humiliation and outrage as a result of defendant's acts. We reject defendants assertion that the amount of the exemplary damages award evidences an intent on the part of the jury to punish defendant.

III. WAS THE COURT'S INSTRUCTION ON THE EVIDEN-
TIARY VALUE OF DIXON'S NONRECEIPT OF INDEPEN-
DENT LEGAL ADVICE ERRONEOUS SO AS TO REQUIRE
REVERSAL?

The following instruction was read to the jury:

> I instruct you that in every transaction between
> one who holds a confidential relation toward an-
> other and that other person that the law will
> presume that he who held an influence over the
> other exercised it unduly to his advantage. In
> other words, the inequality between the transact-
> ing parties is so great that without any proof of
> the exercise of power beyond that which may be
> inferred from the nature of the transaction itself,
> *the Jury will impute an exercise of undue influ-*
> *ence and the transaction will not be upheld unless*
> *it shall be shown that such other had independent*
> *advice and that his act was not only the result of*
> *his own volition, but that he both understood the*
> *act he was doing and comprehended its result and*
> *effect.*
> I further instruct you that the relationship be-
> tween an attorney and his client is such a confi-
> dential relationship.
> It is not the law that no transaction between
> persons in relation of trust and confidence will be
> upheld unless the party upon whom undue influ-
> ence allegedly was exercised had independent legal
> advice with respect to the transaction. *However,*
> *the presence or absence of independent legal ad-*
> *vice is an evidentiary factor which may be*
> *weighed, along with other evidence, in determin-*
> *ing whether undue influence was exercised.* [Em-
> phasis added.]

Defendant contends that the emphasized por-
tions of the instruction were inconsistent and mis-
leading. Defendant preserved the issue with a
timely objection in the trial court. The instruction
was based on *In re Wood Estate,* 374 Mich 278,

286-287; 132 NW2d 35 (1965). There the Court stated in a footnote that "[t]he presence or absence of independent legal advice is an evidentiary factor which may be weighed, along with other evidence, in determining whether undue influence was exercised." 374 Mich 286, n 2. The Court expressly rejected a per se rule which would invalidate transactions between persons in a relation of trust unless the party upon whom undue influence was allegedly exercised had independent legal advice.

In this case, the second emphasized clause served to qualify and clarify the first paragraph. Read as a whole, we believe the instruction adequately conveyed to the jury that the presence or absence of independent legal counsel was merely a factor to be considered in deciding whether undue influence was exercised. To the extent that a technical inaccuracy resulted from the inartful drafting of the first paragraph of the instruction, we find that it was harmless beyond a reasonable doubt.

IV. MUST THE VERDICT AS TO UNDUE INFLUENCE OR BREACH OF FIDUCIARY DUTY BE REVERSED AS AGAINST THE GREAT WEIGHT OF THE EVIDENCE?

A trial court may grant a new trial if the verdict is against the great weight of the evidence or is contrary to law. GCR 1963, 527.1(5), now MCR 2.611(A)(1)(e). The grant or denial of the motion is within the sound discretion of the trial court, which must not substitute its judgment for that of the jury. *Bell v Merritt,* 118 Mich App 414, 422; 325 NW2d 443 (1982). Where there is competent evidence to support the verdict, *Bell v Merritt, supra,* and where the jury's finding was not "against the overwhelming weight of the testi-

mony," *Edwards v Grisham,* 339 Mich 531, 533; 64
NW2d 715 (1954), the verdict should not be set
aside. An appellate court will not interfere with
the trial court's decision on a motion for a new
trial absent an abuse of discretion. *Carpenter v
Cleveland,* 32 Mich App 213, 215; 188 NW2d 248
(1971).

This Court, having reviewed the record and
arguments of counsel, finds that the trial court did
not abuse its discretion in ruling that the verdict
was not against the great weight of the evidence.

V. DID THE TRIAL COURT ABUSE ITS DISCRETION IN
DENYING DEFENDANTS' MOTION FOR REMITTITUR AS
TO THE PECUNIARY DAMAGE AND EXEMPLARY DAM-
AGE AWARDS?

The Court in *Gillespie v Bd of Tenant Affairs of
the Detroit Housing Comm,* 122 Mich App 699,
704; 332 NW2d 474 (1983), lv den 417 Mich
1100.37 (1983), summarized the appropriate stan-
dard of review:

> In reviewing the decision of a trial judge to
> either grant or deny remittitur or grant a new
> trial, we must determine whether there has been
> an abuse of discretion. *Stevens v Edward C Levy
> Co,* 376 Mich 1, 6; 135 NW2d 414 (1965); *Pippen v
> Denison Division of Abex Corp,* 66 Mich App 664,
> 675; 239 NW2d 704 (1976), *lv den* 399 Mich 823
> (1977). A reviewing court will only substitute its
> judgment for that of the trier of fact where a
> verdict has been secured by improper methods,
> prejudice, or sympathy, or where it is so excessive
> as to "shock the judicial conscience". *Watrous v
> Conor,* 266 Mich 397, 401-402; 254 NW 143 (1934);
> *Stevens, supra.*

A verdict will not be set aside because the method

of computation used by the jury in assessing damages cannot be determined, so long as the award is within the range of evidence. See *Markowicz v Pappas,* 102 Mich App 1; 300 NW2d 713 (1980), lv den 411 Mich 992 (1981).

Applying the standard discussed above, we find no abuse of discretion in the trial court's denial of remittitur as to both the pecuniary damages and exemplary damages awards. We find defendant's argument concerning the jury's computation of the pecuniary damages award unpersuasive. The verdict was within the range of evidence and we will not assume under these circumstances that the pecuniary damages award represents a double recovery for the value of the farm.

## VI. WAS THE TRIAL COURT'S INSTRUCTION ON CREDIT FOR IMPROVEMENTS MADE BY DEFENDANT ERRONEOUS SO AS TO REQUIRE REVERSAL?

Defendant challenges the following instruction given by the court:

> If you find that Mr. Evans was guilty of undue influence or a breach of fiduciary duty, and if you further find that he was conscious that his conduct was wrongful, you may not give the Defendant any credit for improvements on the farm, made on the farm whether or not you find the improvements were made, or whether or not you find that the improvements increased the value of the farm.

The instruction, to which defendant objected at trial, corresponds with question seven on the special verdict form:

> Question Number Seven: What credit should the Defendants be given for any payments they made to Dr. Dixon on the price of the farm;

and/or
any improvements they made to the farm which
increased its current value; and/or any taxes they
paid on the farm?
  Answer: $37,500.00.


We agree with plaintiff that whether the in-
struction is a correct statement of Michigan law is
a moot question in view of the money judgment
entered by the court.

One of the remedies originally sought by plain-
tiff was restitution of the farm plus an accounting
to recover lost income. Pursuant to plaintiff's mo-
tion, however, the court entered a money judg-
ment in the amount of the jury awards. Thus, the
money judgment includes pecuniary damages
which accrued as a result of the sale of the prop-
erty by Dixon to defendant. In view of this rem-
edy, Dixon has not benefited from the post-sale
improvements. We conclude that the instruction
and the jury's answer to question number seven of
the special verdict form played no part in the
judgment entered by the court.

Defendant also asserts that it was error not to
include within the "credits for improvements"
instruction an instruction that the jury was to
credit defendant for the amount of property taxes
paid, for the amount of legal fees incurred by
defendant in prosecuting the gravel extraction
case, and for the amount paid to Dixon in payment
for the property. However, no objection was raised
at trial regarding the suggested instruction. Thus,
absent manifest injustice, the Court will not re-
verse. *May v Grosse Pointe Park,* 122 Mich App
295, 298; 332 NW2d 411 (1982). We conclude that
no manifest injustice occurred.

## VII. DID THE TRIAL COURT ERR IN DENYING DEFENDANT KATHERINE EVANS' MOTION FOR NEW TRIAL ON THE ISSUE OF HER JOINT AND SEVERAL LIABILITY FOR PROFESSIONAL NEGLIGENCE?

Judgment was entered jointly and severally against William S. Evans and his wife, Katherine D. Evans, who is not an attorney, for professional negligence. Katherine D. Evans challenged her liability in a motion for a new trial, which was denied.

We find that no basis exists for imposing liability for professional negligence on Katherine D. Evans. There is nothing in the record to suggest that she owed any duty to Dixon.

The judgment against William S. Evans is affirmed and the judgment against Katherine D. Evans is reversed.

Affirmed in part and reversed in part.

CYNAR, J. *(concurring in part and dissenting in part).* I concur in affirming the judgment against William S. Evans but dissent from the majority's decision to reverse the judgment against Katherine D. Evans. The reversal of the judgment against Katherine D. Evans could result in impeding the enforceability of the judgment against William S. Evans.

Defendant Katherine D. Evans presented two arguments, both of which alleged that the trial court erred in refusing to grant her a new trial. While I would agree that the trial court erred in failing to grant a new trial against Katherine D. Evans, I would grant a new trial with instructions to permit the plaintiff to amend the pleadings if needed in proceeding with a new trial, rather than reverse the judgment.