**Robert PARR and Rosalie Parr, Plaintiffs,**

v.

**CENTRAL SOYA COMPANY, INC., An Indiana Corporation, Defendant.**

**Civ. A. No. 87–30040 PH.**

United States District Court,
E.D. Michigan, S.D.

Jan. 12, 1990.

W.J. Drillock, Daniel E. Atkins, Marlette, Mich., for plaintiffs.

David C. Coey, Howard & Howard, Lansing, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, Senior District Judge.

Presently pending are the defendant's alternative motions for judgment notwithstanding the verdict (JNOV), for new trial, or for remittitur, pursuant to Federal Rules of Civil Procedure 50(b), 59, and 59(e). Essentially, the defendant challenges a jury verdict awarding the plaintiffs $50,000.00 in exemplary damages,[1] arguing that (1) exemplary damages are unavailable to the plaintiffs, given the commercial character of their relationship with the defendant; (2) the exemplary damage award, if upheld, should be reduced to reflect the plaintiffs' comparative negligence; (3) the plaintiffs failed to prove the requisite injury necessary for an award of exemplary damages; and (4) the Court erred in allowing the plaintiffs to amend their complaint to request exemplary damages on the eve of trial.

The plaintiffs, in response, assert first, that they presented an appropriate case for an award of exemplary damages; second, that comparative negligence is inapplicable to exemplary damage awards; third, that plaintiffs' proofs adequately established injury supporting an award of exemplary damages; and fourth, amendment of the plaintiffs' complaint represented a valid exercise of this Court's discretion.

The Court will address each issue discretely, although not in the defendant's order of presentation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Briefly, the plaintiffs, through the defendant's agent, purchased cattle feed supplement manufactured by the defendant containing a certain level of animal fat. Subsequent to introducing defendant's product to their dairy herd, the plaintiffs began noticing various health problems, including hoof disease and displaced abdomens, occurring within the herd. As a result, and with the belief that the defendant's product caused the health problems, the plaintiffs filed the instant action.

Following a jury trial, the plaintiffs received $47,000.00 in compensatory damages, reduced to $23,500.00 upon the jury's finding of 50% comparative negligence, and $50,000.00 in exemplary damages. In awarding exemplary damages, the jury affirmatively answered the following interrogatory:

Do you find that the defendant Central Soya Company acted maliciously, or so willfully or wantonly as to demonstrate reckless disregard for the plaintiffs' rights?

## II. STANDARDS APPLICABLE TO THE DEFENDANT'S MOTIONS

### A. JNOV

"[A] federal court sitting in a diversity case must apply the forum state's standard for a directed verdict and a judgment notwithstanding the verdict since the federal rule governing both motions ... does not specify a standard." *Boynton v. TRW, Inc.*, 858 F.2d 1178, 1186 (6th Cir.1988),

---

1. Although the defendant, in its motion, additionally raises issues concerning the Court's treatment of the plaintiffs' action as arising under Michigan's products liability act, and specifically the Court's submission of the case to the jury "on a negligence theory," the defendant fails to develop these issues in its brief. The Court will not, therefore, address these issues in detail. Nonetheless, the Court directs the defendant's attention to a pair of relevant Michigan decisions that support the Court's instructions on the law applicable to the plaintiffs' claims. *See Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W.2d 176 (1984) ("[a]s a common-sense matter, [a products liability] jury weighs competing factors presented in evidence and reaches a conclusion about the judgment or decision (i.e., conduct) of the manufacturer. The underlying negligence calculus is inescapable." *Id.* at 688, 365 N.W.2d 176); *Central Soya Co., Inc. v. Rose*, 135 Mich.App. 180, 352 N.W.2d 727 (1984) (affirmance of verdict against counter-defendant Central Soya in products liability action arising from sale of Central Soya's feed and subsequent harm to Rose's hogs). Finally, the Court notes that Michigan Standard Jury Instruction (Second) 25.31, regarding products liability/design defect claims, speaks specifically in terms of negligence.

citing *Briney v. Sears Roebuck & Co.*, 782 F.2d 585, 587 (6th Cir.1986). Under Michigan law,

> [w]hen faced with a motion for judgment notwithstanding the verdict the court must view the evidence in a light most favorable to the nonmoving party and decide if the facts presented preclude judgment for the nonmoving party as a matter of law. If the evidence is such that reasonable men could differ, the question is one for the jury and judgment notwithstanding the verdict is improper.

*Beard v. Detroit*, 158 Mich.App. 441, 451–453, 404 N.W.2d 770, *app. denied*, 428 Mich. 901 (1987), quoting *Smart v. The New Hampshire Ins. Co.*, 148 Mich.App. 724, 731, 384 N.W.2d 772 (1985), *aff'd*, 428 Mich. 236, 407 N.W.2d 362 (1987).

### B. NEW TRIAL

"In a diversity case, the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law." *D.R. C.D.T., Inc. v. Integrity Ins. Co.*, 816 F.2d 273, 276 (6th Cir.1987), quoting *Toth v. Yoder Co.*, 749 F.2d 1190, 1197 (6th Cir. 1984). A new trial may be granted "if [the judge] is of the opinion that the verdict is against the clear weight of the evidence...." *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir.), *cert. denied sub nom*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967) (citations omitted). Thus, the analysis required of a new trial motion "is always a comparison of opposing proofs." *General American Life Ins. Co. v. Central Nat'l Bank of Cleveland*, 136 F.2d 821, 823 (6th Cir.1943), citing *Felton v. Spiro*, 78 F. 576, 582 (6th Cir.1897).

### C. REMITTITUR

Generally, remittitur issues do not arise unless and until the Court finds that a new trial regarding a damage award is warranted. If the Court finds a basis for a new trial arising from an excessive damage award, the Court may present the plaintiff with the option of either reducing the award, or of retrying the pertinent issue. *See Burnett v. Coleman Co.*, 507 F.2d 726

(6th Cir.1974); *Brewer v. Uniroyal, Inc.*, 498 F.2d 973 (6th Cir.1974).

### III.

### A. AMENDMENT OF PLAINTIFFS' COMPLAINT

■ This issue requires little discussion. District courts retain broad discretion in allowing a plaintiff to amend a complaint. The Court believes that the action complained of by the defendant, this Court's granting of the plaintiffs' request to amend their complaint to include an exemplary damage request on the day of trial, closely resembles an allowance of an amendment of the pleadings to conform to the evidence. Under Fed.R.Civ.P. 15(b),

> [i]f evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

As noted by the defendant, the plaintiffs' original complaint requested exemplary damages. The defendant argues, however, that the omission from the original complaint of "emotional distress" as a basis for such damages unduly prejudiced the defendant when the Court allowed the presentation of this recovery theory to the jury.

The Court finds no such prejudice. The inclusion of an exemplary damage request in the original complaint, even if it omits specific reference to emotional distress, surely placed the defendant on notice of the potential introduction of emotional distress evidence at trial. Moreover, and as discussed more particularly *infra*, the plaintiffs did not produce any expert testimony concerning the impact of the defendant's actions on Mr. Parr's emotional well-being. Thus, the defendant can hardly assert undue prejudice through the absence of an opportunity to produce an expert to testify regarding this issue. Simply put,

the defendant had adequate notice of a possible emotional distress claim, and the proofs set forth at trial on the issue in no way disadvantaged the defendant.

### B. COMMERCIAL NATURE OF PARTIES' RELATIONSHIP

■ The defendant contends that its relationship with the plaintiffs was purely commercial, and that exemplary damages based upon incidents arising from such relationships are unavailable. While authority undoubtedly exists holding that a claim for breach of a commercial contract does not typically give rise to exemplary damages, *see Valentine v. General American Credit, Inc.*, 420 Mich. 256, 263, 362 N.W.2d 628 (1984), this rule does not necessarily foreclose recovery of emotional distress damages in an appropriate situation.

In *Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980), the Michigan Supreme Court, in discussing the availability of exemplary damages in breach of commercial contract cases, held that "absent allegation and proof of tortious conduct existing independent of the breach, ..., exemplary damages may not be awarded...." *Id.* at 420–21, 295 N.W.2d 50. The defendant attempts to characterize the plaintiffs' cause of action as based on a simple breach of contract, and to thereby assert the application of *Kewin's* prohibition against exemplary damage recovery for such claims. The Court is somewhat confused by the defendant's insistence in this regard. The plaintiffs' central claim against the defendant involves products liability, not breach of contract. As such, the plaintiffs' claim sounds in tort, not contract. *See Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 682, 365 N.W.2d 176 (1984) ("from their earliest application theories of products liability have been viewed as tort doctrines...."). Acceptance of the defendant's position would eviscerate the products liability cause of action, since no purchaser of a defective product could assert a products liability claim given the existence, albeit implied, of a contractual relationship between the purchaser and the seller. This is not a result, in this Court's estimation, contemplated by

the Michigan legislature in adopting the products liability act. The Court therefore rejects the defendant's argument concerning preclusion of exemplary damages based on the commercial nature of the parties' relationship.

### C. ADEQUACY OF PLAINTIFFS' PROOFS REGARDING EXEMPLARY DAMAGES

■ The defendant urges that even if exemplary damages are available under the circumstances of this case, the plaintiffs failed to meet their burden of proof for recovery of such damages. In particular, the defendant asserts that the plaintiff Robert Parr failed to introduce sufficient evidence of any emotional injury arising from the defendant's conduct, as is necessary to prevail on a claim for exemplary damages.

To recover exemplary damages, a plaintiff must prove that the defendant's malicious, wilful and wanton, or reckless conduct resulted in an injury to the plaintiff's feelings. *Green v. Evans*, 156 Mich.App. 145, 153, 401 N.W.2d 250 (1985), *citing Kewin, supra*, at 419, 295 N.W.2d 50. The defendant does not challenge the jury's finding that defendant engaged in malicious, wilful and wanton, or reckless conduct. The Court's sole function is therefore to determine whether the plaintiffs introduced sufficient evidence of injured feelings, and particularly emotional distress, to sustain the jury's award of exemplary damages.

Undeniably, the plaintiffs produced no affirmative objective evidence that Robert Parr suffered emotional distress in connection with damage to his herd arising from use of the defendant's defective feed supplement. Yet, as the plaintiffs correctly note,

> [d]irect evidence of an injury to the plaintiff's feelings is not essential. Rather, the question is whether the mental suffering and injury to feelings are natural and proximate in view of the nature of the defendant's conduct.

*Green,* 156 Mich.App. at 153, 401 N.W.2d 250, citing *Wise v. Daniel,* 221 Mich. 229, 234, 190 N.W. 746 (1922) (further citation omitted). Given this principle, the Court believes that the jury could reasonably have concluded, in light of the evidence concerning the defendant's conduct, that Robert Parr suffered emotional distress as a result of such conduct. Furthermore, the Court does not find the $50,000.00 award so excessive as to "shock the judicial conscience." *See Armstead v. Jackson,* 121 Mich.App. 239, 328 N.W.2d 541 (1982).

## D. COMPARATIVE NEGLIGENCE

■ Lastly, the defendant asserts that any award of exemplary damages must be reduced to reflect the plaintiffs' comparative negligence. In support of this assertion the defendant cites Mich.Comp.Laws Ann. § 600.2949(1), which provides that

> [i]n all products liability actions brought to recover damages resulting from death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or the plaintiff's legal representatives, but damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

The Court, in instructing the jury, applied this directive solely to the plaintiffs' claims based upon negligence in the manufacture of, or instructions on the use of, the feed supplement. The jury thereafter found the plaintiffs 50% negligent in managing their dairy herd, and the Court reduced damages awarded for injuries to the plaintiffs' herd to reflect the plaintiffs' negligence.

The Court's review of Michigan case law reveals one opinion squarely addressing the question of whether comparative negligence should apply to all conduct short of intentional conduct. In *Vining v. City of Detroit,* 162 Mich.App. 720, 413 N.W.2d 486 (1987), *lv. app. denied,* 430 Mich.App. 893 (1988), the court initially rejected any automatic application of Michigan prece-

dent regarding the effect of the degree of a defendant's culpability on the availability of a *contributory* negligence defense. The court noted that in at least one other instance, the Michigan Supreme Court rejected prior authority respecting applicability of contributory negligence when addressing the applicability of comparative negligence to a similar circumstance. *See Hardy v. Monsanto Enviro–Chem Systems, Inc.,* 414 Mich. 29, 323 N.W.2d 270 (1982). Next, the court found guidance in several cases from other jurisdictions analyzing the propriety of providing a comparative negligence defense to a defendant engaging in culpable conduct lying between simple negligence and intent to harm. The court noted that in California, which judicially adopted the comparative negligence doctrine, courts have suggested that the defense should remain available to defendants engaging in extra-negligent conduct. *See Li v. Yellow Cab Co. of California,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); *Sorensen v. Allred,* 112 Cal.App.3d 717, 169 Cal.Rptr. 441 (1980). Yet, the court additionally recognized that in the majority of jurisdictions adopting comparative negligence statutorily, courts applying the statutes have found the defense available to only those defendants found liable for simple, or possibly gross, negligence. *See Derenberger v. Lutey,* 207 Mont. 1, 674 P.2d 485 (1983);[2] *Davies v. Butler,* 95 Nev. 763, 602 P.2d 605 (1979); *Ryan v. Foster & Marshall, Inc.,* 556 F.2d 460 (9th Cir.1977) (applying Oregon law). The *Vining* court, in reconciling the different treatment of legislatively adopted comparative negligence, placed particular emphasis on the language contained in the pertinent comparative negligence statutes; language expressly limiting application of the defense to acts of simple or gross negligence, but not to wilful and wanton behavior. 162 Mich.App. at 726, 413 N.W.2d 486.

Michigan has adopted comparative negligence both judicially and legislatively. In *Placek v. Sterling Heights,* 405 Mich. 638,

---

**2.** *Derenberger* was expressly overruled in *Martel v. Montana Power Co.,* 231 Mont. 96, 752 P.2d 140 (1988). Montana now applies comparative negligence to all conduct short of intent to harm.

275 N.W.2d 511, *reh'g denied*, 406 Mich. 1119 (1979), the Michigan Supreme Court abandoned contributory negligence in favor of the pure comparative negligence system currently in place for cases rooted in common law torts. As noted earlier, however, the Michigan products liability statute affirmatively provides for "contributory" negligence as a defense, notwithstanding the fact that the defense described in the statute is in fact pure comparative negligence. Mich.Comp.Laws Ann. § 600.2949(1). The question therefore posed to the Court, and apparently unanswered in Michigan jurisprudence, is whether exemplary damages recovered in an action brought pursuant to Michigan's products liability statute may be reduced to reflect a plaintiff's own negligence.[3]

Reviewing the statute itself provides little aid in answering the question. Unlike the statutory language in the jurisdictions discussed in *Vining, supra*, section 2949(1) makes no express mention of the degree of a defendant's culpability necessary to render the comparative negligence defense available. Rather, the statute merely establishes that plaintiffs "[i]n all products liability actions" are not subject to the complete bar to recovery existing under the doctrine of contributory negligence. As such, the statute, enacted prior to the judicial adoption in *Placek* of pure comparative negligence, is in some respects superfluous. The Court therefore finds the express language in the products liability statute unavailing in assessing the applicability of comparative negligence to an award of exemplary damages.

This effectively leaves the Court with *Vining* for direction. While the *Vining* court was careful to limit the scope of its decision to a finding that "comparative negligence should be applied in all common-law tort actions sounding in negligence where the defendant's misconduct falls short of being intentional," this Court believes that extension of that finding to products liability actions comports with the policies underlying adoption of pure comparative negligence. As noted in *Vining*,

> [t]he blurring of the distinction between negligent and intentional conduct through the creation of the doctrines of gross negligence and wilful and wanton misconduct has been done to mitigate the harsh effects of the rule of contributory negligence. *Burnett v. City of Adrian*, 414 Mich. 448, 461; 326 N.W.2d 810 (1982) (Moody, J. concurring). With the advent of the doctrine of comparative negligence it is no longer necessary in common-law negligence actions to delineate whether the unintentional conduct of a defendant is negligent, grossly negligent, or wilful or wanton. Compensation for damages, where conduct is unintentional, should be apportioned according to fault.

162 Mich.App. at 727–728, 413 N.W.2d 486. The Michigan Supreme Court's recognition, discussed at note 1 *supra*, that products liability actions in essence focus on the defendant's conduct in designing and manufacturing a product further supports application of *Vining*'s rule to products liability actions. That is, despite Michigan's formal statutory acknowledgement of a "products liability" cause of action, Michigan's rejection of strict liability in favor of a negligence analysis in evaluating such claims indicates a continued reliance on common law principles. claims indicates a continued reliance on common law principles. In light of this reliance, the Court finds *Vining* controlling, and therefore reduces the plaintiffs' $50,000.00 exemplary damage award to $25,000.00, reflecting the

---

**3.** The Court is cognizant of opinions from sister jurisdictions holding comparative negligence unavailable for reducing awards of "exemplary" damages. *See* 10 ALR 4th 946, § 4, and cases collected therein. Yet in all of those jurisdictions, exemplary damages are designed to punish a defendant's conduct. Thus, these courts reason that any reduction of such damages to reflect a plaintiff's negligence would undermine the purpose for awarding exemplary damages.

*See, e.g., Amoco Pipeline Co. v. Montgomery*, 487 F.Supp. 1268 (W.D.Okla.1980).

Michigan, however, awards exemplary damages solely to compensate plaintiffs for injuries to their feelings. *See Eide v. Kelsey–Hayes Co.*, 431 Mich. 26, 51, 427 N.W.2d 488 (1988) (Griffin, J., concurring in part and dissenting in part). The Court therefore finds the above-cited authority unpersuasive in resolving the instant dispute.

jury's finding of 50% negligence on the plaintiffs' behalf.

### IV

Based upon the preceding, the Court DENIES the defendant's motion for judgment notwithstanding the verdict, new trial, or remittitur. The Court AMENDS the plaintiffs' judgment, however, by reducing the $50,000.00 exemplary damage award to $25,000.00, reflecting the jury's finding of 50% negligence on the plaintiffs' behalf.

IT IS SO ORDERED.