No. 82-324

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

RITA DERENBURGER, Guardian Ad Litem
of RAYMOND DERENBURGER, a minor,

Plaintiff and Respondent,

-vs-

HURBERT JOHN LUTEY,

Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Robert J. Boyd, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lyman H. Bennett, III, argued, Bozeman, Montana

For Respondent:

Poore, Roth & Robinson, Butte, Montana
Rick Anderson & Urban Roth argued, Butte

_____

Submitted:  March 24, 1983

Decided:  November 17, 1983

Filed:  **NOV 1 7 1983**

_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Appellant Hurbert Lutey appeals a Deer Lodge County jury verdict awarding Raymond Derenberger, respondent, $110,000 in damages he suffered in an automobile accident. Respondent was riding as a passenger in his own vehicle which the appellant was driving. We reverse and remand.

On November 5, 1979, Ray Derenberger, Hurb Lutey and their girlfriends went to a movie in Anaconda. They drove in Ray's vehicle. Prior to and during the movie, Ray, Hurb and one of the girls consumed approximately eighteen beers. At about 10:00 p.m., before the movie was over, Ray and Hurb left the theater to purchase more beer. Initially, Ray drove; however, upon Hurb's request, he relinquished control of the vehicle to Hurb. There was testimony indicating that Ray told Hurb to "see what it [the car] would do." Hurb testified that they were going quite fast through town.

The vehicle was traveling down Park Street, through a 25 m.p.h. zone, at approximately 55 to 60 miles per hour. The car crossed some railroad tracks that were laid on a grade higher than Park Street, causing the car to raise somewhat, possibly even leave the ground. Hurb lost control of the vehicle, and it struck a house on 1100 East Park. At the time of the accident, the road was dry and the record indicates that the car was in good condition.

As a result of the accident, Ray suffered a severe brain concussion which caused organic brain damage, broken facial bones, a broken arm, a broken leg and several scrapes and lacerations. Hurb pleaded guilty to driving while intoxicated and was fined $300. At the time of the accident Ray was sixteen yers old and Hurb was nineteen.

2

Ray's mother brought an action for Ray as his guardian ad litem. She alleged that Hurb's reckless, gross, willful and wanton negligence in driving the vehicle caused Ray's injuries.

At trial, Ray's lawyer introduced evidence that Hurb had pleaded guilty to two separate charges of "endangering the welfare of children" by supplying them with intoxicating beverages. Hurb's counsel made a motion in limine to prevent admission of this evidence on the grounds of irrelevance and prejudice. In response to the motion, Ray's counsel stated:

> "Your Honor, we are asking for punitive damages in this case. The two incidents I wish to put in evidence through cross-examination if he admits independently that the Defendant one month earlier had been arrested for buying intoxicating beverages for an underage girl, some 16 years of age, and in an automobile. He plead guilty to that offense and was fined $75.00. Approximately one month after this accident, when obviously he purchased intoxicating beverages for a minor, he again was charged with, convicted and plead guilty to the same offense. I submit to the Court that under the criteria which relate to and the material facts which relate to the issue of punitive damages, that the actions of the Defendant on both the occasion in question and like conduct are close enough in time to show in effect a total disregard for the type of conduct he engaged in that evening, i.e., purchasing intoxicating beverages for a minor, is relevant on that issue as going to the amount of damages and the willfulness and wantonness of that conduct on that particular evening."

The motion was denied and the evidence was admitted.

By special verdict the jury found that Hurb was guilty of willful or wanton misconduct. They also found that Ray was contributorily negligent in the amount of 25 percent. However, the court instructed the jury that if Hurb's misconduct was willful or wanton, ordinary contributory

3

negligence would not reduce Ray's recovery (Instruction No. 14). Thus, the jury awarded $100,000 in total damages and $10,000 in punitive damages.

Hurb Lutey brings this appeal and raises two issues for our consideration:

1. Was it error for the District Court to instruct the jury that respondent's recovery should not be reduced by his contributory negligence if the appellant is guilty of willful or wanton misconduct?

2. Was it error for the District Court to allow the admission of evidence regarding the appellant's guilty pleas to charges of supplying liquor to minors?

Lutey first argues that the District Court erred by instructing the jury that Derenberger's recovery could not be reduced by his own contributory negligence if they found Lutey guilty of willful or wanton misconduct. He contends that the legislative enactment of the comparative negligence doctrine abolished this rule; thus, Derenberger's own contributory negligence should reduce his recovery. Support for this is found in the fact that the harshness of the all-or-nothing rule has been eliminated by comparative negligence. Further, plaintiffs can recover punitive damages, which cannot be reduced by their own negligence.

Derenberger asserts that Montana has always distinguished ordinary or gross negligence from willful or wanton misconduct. Hence, the use of the word "negligence" in the comparative negligence statute indicates that the legislature did not intend a comparison between plaintiff's negligence and defendant's willful misconduct to reduce plaintiff's recovery.

4

We hold that the comparative negligence statute does not contemplate a comparison between ordinary negligence and willful or wanton misconduct.

The comparative negligence statute mandates that the negligence of the plaintiff does not bar recovery so long as it is not greater than that of the defendant. However, his recovery is reduced by his own contributory negligence. Section 27-1-702, MCA. The statute reads:

> "Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

The definition of negligence is found in section 1-1-204(4), MCA, which reads:

> "'Neglect', 'negligence', 'negligent', and 'negligently' denote a want of the attention to the nature or probable consequences of the act or omission that a prudent man would ordinarily give in acting in his own concerns."

On the other hand, the term "willfully" has a different meaning. It is defined in section 1-1-204(5), MCA:

> "'Willfully', when applied to the intent with which an act is done or omitted, denotes a purpose of willingness to commit the act or make the omission referred to. It does not require any intent to violate the law, to injure another, or to acquire any advantage."

Furthermore, section 27-1-701, MCA, separately establishes that one is liable for willful acts as well as negligent acts. The statute reads:

> "Everyone is responsible not only for the results of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the

5

> management of his property or person
> except so far as the latter has willfully
> or by want of ordinary care brought the
> injury upon himself."

The defense clause of this statute does not change our decision as we interpret it to limit a comparison of plaintiff's acts only when defendant has committed acts of a similar kind. When section 27-1-701, MCA, accompanied contributory negligence, this Court held that a plaintiff's ordinary contributory negligence would not bar recovery for injuries from the defendant's willful or wanton misconduct. Wollaston v. Burlington Northern, Inc. (Mont. 1980), 612 P.2d 1277, 37 St.Rep. 1015; Mallory v. Cloud (1975), 167 Mont. 115, 535 P.2d 1270; Mihelich v. Butte Electric Railway Co., et al. (1929), 85 Mont. 604, 281 P. 540. Further, under comparative negligence, this would remain so because section 27-1-702, MCA, mandates a comparison of negligence, which we find is separate and distinct from willful or wanton misconduct.

The Nevada Supreme Court interpreted the term "gross negligence" in Nevada's comparative negligence statute in Davies v. Butler (1979), 95 Nev. 763, 602 P.2d 605. They found that the legislature, by including the term "gross negligence" in the comparative negligence statute, determined that the concept of gross negligence is comparable to and subject to comparison with ordinary negligence, but left the law unchanged with regard to conduct in which defendant's culpability more closely approaches that of one who intentionally inflicts damage. Under this interpretation, our statute which only applies to "negligence" would not encompass willful or wanton misconduct as gross negligence is a more aggravated form of negligence.

6

The above statutory construction indicates to us that mere negligence and willful and wanton misconduct are different in kind, rather than degree. Consequently, we find that the legislature did not intend that they be compared under Montana's comparative negligence statute.

This Court has distinguished the two terms on several occasions. In Cashin v. Northern Pacific Railway Co. (1934), 96 Mont. 92, 28 P.2d 862, we were to determine whether the evidence of the case provided a basis for exemplary damages. Finding it did, we concluded that ". . . in this jurisdiction something more than gross negligence must be shown in order to justify such an award; that is, the act must be wanton . . . or willful, or warrant the designation of that act as malicious." 96 Mont. at 111, 28 P.2d at 869. Exemplary damages were warranted on the theory that the act was knowingly done, in reckless disregard of the rights of others. The fact that willful or wanton misconduct establishes a basis for exemplary damages indicates to us that such misconduct is distinct from negligence. See also, Hannigan v. Northern Pacific Ry. Co. (1963), 142 Mont. 335, 384 P.2d 493.

Other jurisdictions have come to a similar conclusion. In a personal injury action the Oregon Supreme Court held that wanton misconduct is different in kind, not merely degree, from ordinary or gross negligence. It further concluded that one guilty of wanton misconduct is subject to liability greater in scope than that which applies to negligent persons, and contributory negligence is no defense. Falls v. Mortensen (1955 ), 207 Or. 130, 295 P.2d 182.

In a wrongful death action against the City of Seattle, the Washington Supreme Court found that willful or wanton

7

misconduct does not arise out of negligence and thus is not within the meaning of the term negligence. Adkisson v. City of Seattle (1953), 42 Wash.2d 676, 258 P.2d 461. The Washington court stated:

> ". . . Negligence and willfulness imply radically different mental states. Negligence conveys the idea of neglect or inadvertence, as distinguished from premeditation or formed intention. An act into which knowledge of danger and willfulness enter is not negligence of any degree, but is willful misconduct. As long as the element of inadvertence remains in conduct, it is not properly regarded was willful. Wanton misconduct is positive in nature, while mere negligence is materially negative." 258 P.2d at 465.

Prosser distinguishes the two concepts of culpability. In defining willful, wanton and reckless conduct, he states, "[t]hey have been grouped together as an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care." W. Prosser, Torts § 34 at 184 (4th Ed. 1971). (Emphasis added.)

We find the above authority persuasive and further indication that willful or wanton misconduct is different in kind from negligence. The term negligence in the comparative negligence statutes does not encompass willful or wanton misconduct and in an action based on such conduct the comparative negligence statute is inapplicable and the plaintiff's own contributory negligence should not reduce his recovery. V. Schwartz, Comparative Negligence, § 5.3 at 107 (1974).

Prior to the enactment of comparative negligence, Montana clearly followed the rule that contributory negligence of the plaintiff is no bar to his recovery for injuries caused by willful or wanton misconduct of the

8

defendant. Wollaston v. Burlington Northern, Inc., supra; Mallory v. Cloud, supra; Mihelich v. Butte Electric Railway Co., supra. Since comparative negligence was established to ameliorate the harshness of the contributory negligence defense, we believe that allowing assertion of the defense under the statute when it would be no defense prior to enactment of comparative negligence would thwart this legislative purpose. Schwartz, supra, § 5.3 at 107. This same rationale prevents reduction of plaintiff's recovery when the defendant's acts are willful.

In a wrongful death action the Supreme Court of Wyoming determined that the plaintiff's recovery would not be reduced by his own negligence since the defendant's actions were willful and wanton. Danculovich v. Brown (Wyo. 1979), 593 P.2d 187. The court said:

> "The conclusion, then, is that § 1-1-109 does not mandate reduction of damages on the basis of comparative negligence of the plaintiff if defendant's misconduct is willful and wanton. To hold otherwise would be inconsistent with the purpose behind the doctrine of comparative negligence. The doctrine is designed to ameliorate the harshness of the contributory negligence bar. The court decisions which have not applied the contributory negligence bar to willful and wanton misconduct had the same purpose. Damages resulting from willful and wanton misconduct are not 'damages for negligence' as that term is used in § 1-1-109." 593 P.2d at 194.

In Davies v. Butler, supra, the Nevada High Court found that a defendant whose culpability is so close to intentional wrongdoing should not have the benefit of the contributory negligence defense. The court concluded that this rule was unchanged by comparative negligence.

Lutey next contends that the evidence of guilty pleas to contributing to the delinquency of minors is irrelevant.

9

Derenberger asserts that punitive damages can be awarded to punish the appellant for malicious or wrongful acts and malice can be implied from a course of conduct that is known to be harmful or unlawful. Further, in awarding punitive damages, the jury may take into account whether Lutey's acts were of such a nature as to amount to a reckless disregard of the rights of others. Essentially, Lutey should be held to know that his prior criminal activity was harmful or unlawful. Thus, the malice necessary to award punitive damages can be implied.

We hold that the evidence of Lutey's prior guilty pleas is irrelevant with respect to (1) proving that his misconduct on the night of the accident was willful or wanton, and (2) establishing a basis for punitive damages. Consequently, we reverse and remand the case for further proceedings.

It is well settled that all relevant evidence is admissible and irrelevant evidence is inadmissible. Rule 402, Mont.R.Evid. Relevant evidence is defined by Rule 401, Mont.R.Evid. It states:

> "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant."

This Court has adopted the test of relevance stated by the Commission on Evidence. The test is:

> ". . . whether an item of evidence will have any value, as determined by logic and experience, in proving the proposition for which it is offered. The standard used to measure this acceptable probative value is 'any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence.' This standard rejects more stringent ones

10

which call for evidence to make the fact or proposition for which it is offered more probable than any other. It is meant to allow wide admissibility of circumstantial evidence limited only by Rule 403 or other special relevancy rules in Article IV." State v. Fitzpatrick (Mont. 1980), 606 P.2d 1343, 1354, 37 St.Rep. 194, 207. (Emphasis added.)

Respondent was attempting to prove that appellant was driving the vehicle recklessly, at a high rate of speed, and that such action was willful and wanton misconduct, and further, that such misconduct was the cause of respondent's injuries. Evidence of appellant's prior criminal activity does not have the tendency to make the existence of defendant's alleged willful and wanton misconduct while driving a vehicle on the night of November 5, 1979, more or less probable. In other words, the issue was not whether appellant was supplying liquor to minors but whether his actions were in willful and wanton disregard for others. Hence, evidence regarding the defendant supplying alcohol to minors is irrelevant.

Punitive damages can be awarded in accordance with section 27-1-221, MCA. The statute reads:

"When exemplary damages allowed. In any action for a breach of obligation not arising from contract where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."

In the case at bar we conclude that evidence of appellant's prior guilty pleas was also irrelevant with respect to establishing a basis for punitive damages. The law is clear that to award punitive damages oppression, fraud or malice must be associated with the act complained of. Here, the act complained of was appellant's operation of the

vehicle in a reckless fashion. The fact that appellant has purchased alcoholic beverages for minors is irrelevant to the act complained of and thereby irrelevant to establishing a basis for punitive damages. It did not have a tendency to make any requisite factors for punitive damages more or less probable.

Reversed and remanded for a new trial.


_____
Chief Justice

We concur:


_____

_____

_____

_____
Justices

Mr. Justice L.C. Gulbrandson, dissenting and specially concurring:

I concur in the holding that it was reversible error to allow admission of evidence regarding appellant's guilty pleas to charges of supplying liquor to minors.

I respectfully dissent from the holding that respondent's recovery should not be reduced by his contributory negligence, if appellant is guilty of willful or wanton misconduct.

In Lawrence v. Harvey (Mont. 1980), 607 P.2d 551, 556, 37 St.Rep. 370,374, this Court stated:

> "Montana follows the rule of statutory construction that where a statute is adopted form a sister state, it is ordinarily presumed that the legislature borrows the construction placed upon it by the highest court of the state from which it is borrowed, although such construction is not binding upon this Court. Continental Oil Co. v. Board of Labor Appeals (1978), Mont., 582 P.2d 1236, 1240, 35 St.Rep. 1153, 1156; J.T. Miller Co. v. Madel (1978), Mont., 575 P.2d 1321, 1322, 35 St.Rep. 263, 265; State v. Murphy (1977), Mont., 570 P.2d 1103, 1105, 34 St.Rep.1174, 1177; State ex rel. Mankin v. Wilson (1977), Mont., 569 P.2d 922, 924, 34 St.Rep. 1075, 1078 * * * "

The Supreme Court of the State of Wisconsin, the sister state from whom the Montana legislature borrowed the exact language of the comparative negligence statute, has confronted the precise issue that is now before this Court. In Bielski v. Schulze, (1962), 16 Wis.2d 1, 114 N.W.2d 105 111-113, the Supreme Court of Wisconsin analyzed this issue as follows:

> "The history of the development of gross negligence, its reason for existing, the content of the concept, and

the inequitable results and consequences of its application have led us to decide the doctrine of gross negligence, as we know it, should be interred in the limbo of jurisprudence along side the doctrine of assumption of risk in negligence cases. See McConville v. State Farm Mut. Automobile Ins. Co. (1962), 15 Wis.2d 374, 113 N.W.2d 14. Gross negligence is an anomaly and contradiction in terms, and apparently considered in terms of degree rather than kind of negligence in our early cases. It gradually waxed strong in flesh and spirit on such terms as 'such a degree of rashness or wantonness which evinced a total want of care,' or a 'willingness to harm although such harm may not have been intended,' 'rashly,' 'recklessly,' and 'wantonly,' 'little less than an intentional wrong,' 'willingness to perpetrate injury' or 'a purpose to take known chances of perpetrating an injury. Gradually, gross negligence acquired by metamorphosis a new nature:--Ordinary negligence lay in the field of inadvertence but gross negligence in the field of actual or constructive intent to injure, and the two did not grade into each other. When the drinking cases increased in number, we reached the point that the concurrence of causal ordinary negligence and intoxication, as a matter of law, was gross negligence.

"One of the main reasons for the growth of the doctrine of gross negligence was to ameliorate the hardships of the common law doctrine of contrubutory negligence which barred recovery from a tortfeasor to one negligently causing, however slightly, his own injury. However, gross negligence being defined as different in kind and not in degree, could not be compared to ordinary negligence and, hence, contributory negligence was no bar to recovery.

    ". . .

"The doctrine of gross negligence as a vehicle of social policy no longer fulfills a purpose in comparative negligence. Much or what constituted gross negligence will be found to constitute a high percentage of ordinary negligence causing the harm. Obviously, we are stressing the basic goal of the law of negligence, the equitable

15

distribution of the loss in relation to the respective contribution of the faults causing it."

In <u>Li v. Yellow Cab Company of California</u> (1975), 13 Cal.3d 804, 825-26, 532 P.2d 1226, 1241, 119 Cal.Rptr. 858, 873, the Supreme Court of California addressed the issues as follows:

"Finally there is the problem of the treatment of willful misconduct under a system of comparative negligence. In jurisdictions following the 'all-or-nothing' rule, contributory negligence is no defense to an action based upon a claim of willful misconduct (see Rest.2d Torts, Section 503; Prosser, Torts, <u>supra</u>, Section 65, p. 426), and this is the present rule in California. (Williams v. Carr (1968) 68 Cal.2d 579, 583, 68 Cal.Rptr. 305, 440 P.2d 505.) As Dean Prosser has observed, '[this] is in reality a rule of comparative fault which is being applied, and the court is refusing to set up the lesser fault against the greater.' (Prosser, Torts, <u>supra</u>, Section 65, p. 426.) The thought is that the difference between willful and wanton misconduct and ordinary negligence is one of kind rather than degree in that the former involves conduct of an entirely different order, and under this conception it might well be urged that comparative negligence concepts should have no application when one of the parties has been guilty of willful and wanton misconduct. It has been persuasively argued, however, that the loss of deterrent effect that would occur upon application of comparative fault concepts to willful and wanton misconduct as well as ordinary negligence would be slight, and that a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional. (Schwartz, <u>supra</u>, Section 5.3, p. 108.) The law of punitive damages remains a separate consideration. (See Schwartz, <u>supra</u>, Section 5.4 pp. 109-111.)"

Subsequent to the California Supreme Court's decision in <u>Li v. Yellow Cab Company of California,</u> supra, the California Court of Appeals, Fifth District, expanded upon

16

said decision in <u>Sorenson v. Allred</u> (1980), 112 Cal.App.3d 717, 725-26, 169 Cal.Rptr. 441, 446, as follows:

> "In summary, we conclude that no defensible reason exists for categorizing willful and wanton misconduct as a different kind of negligence not suitable for comparison with any other kind of negligence. The adoption of comparative negligence in Li rendered such a separate category unnecessary since contibutory negligence on the part of the plaintiff was no longer a total bar to recovery for a tortious injury. We apply an old axiom, 'when the need for a rule ceases, the rule ceases.'

> ". . .

> "The important by-product of the abolition of shades of negligence or other categorizations of fault would be the streamlining of the trial of cases. The submission to the triers of fact, particularly juries, of issues of liability upon the simply stated question, 'Whose fault was it, and if both are at fault, what are the degrees of fault of each' places the issues in a context more readily understood. The greater the elimination of such 'buzz' words as willful misconduct, last clear chance, [assumption of the risk], etc., the more the focus will be upon the real issues as we have noted above. The elimination of willful misconduct as a bar to recovery offers justice to both plaintiffs and defendants in situations where it now is all or nothing. Witness Ewing v. Cloverleaf Bowl, supra, 20 Cal.3d 398, 143 Cal.Rptr. 13, 572 P.2d 1155, where plaintiff would be the beneficiary of the elimination of willful misconduct as a total bar to recovery.

> "For the reasons discussed, we conclude that the doctrine of comparitive negligence should apply where either party's conduct is of the type traditionally described as willful and wanton. * * * "

The Court of Appeals, Second District, in <u>Southern Pac. Transp. Co. v. State</u> (1981), 115 Cal.App.3d 116, 121, 171 Cal.Rptr. 187, 191 concurred with <u>Sorenson</u>, supra:

"The second unresolved issue in <u>Li</u>, the role of willful misconduct under comparative negligence, was recently addressed by the Court of Appeal in the Fifth District, which concluded that willful misconduct does not preclude application of the comparative-negligence rule. (Sorenson v. Allred (1980) 112 Cal.App.3d 717, 169 Cal.Rptr. 441.) In reaching its conclusion, the court noted that the contributory-negligence rule and the willful-misconduct rule together amount to a rule of comparative fault under which the lesser fault does not bar the greater. The court said that no defensible reason exists for categorizing willful misconduct as a kind of negligence not comparable with any other kind of negligence, and it concluded that the adoption of a rule of comparative negligence rendered superfluous the separate category of negligence described as willful misconduct. (p. 725, 169 Cal.Rptr. 441.)

"We agree with the Court of Appeal's reasoning that the need for a separate category of negligence identified as willful misconduct, which was designed to alleviate the inequity of the all-or-nothing contributory negligence rule, has disappeared with the adoption of a rule of comparative negligence. The concept of willful misconduct remains viable only for an intentional injury which justifies punitive damages. Unless a defendant has intentionally injured a plaintiff, he is entitled to a reduction in his liability to the plaintiff to the extent plaintiff's own negligence has contributed to the injury . . . . Under the comparative negligence dispensation, every party remains liable for his proportionate share of fault, whether his conduct is described as simple negligence or as willful misconduct. (See Li v. Yellow Cab, supra, 13 Cal.3d, p. 829, 119 Cal.Rptr. 858, 532 P.2d 1226; American Motorcycle Association v. Superior Court, supra, 20 Cal.3d p. 588, 146 Cal.Rptr. 182, 578 P.2d 899.)

This Court has ruled that punitive damages cannot be reduced by the percentage of plaintiff's contributory negligence. In <u>Shahrokhfar v. State Farm Mutual Automobile Insurance Company</u> (Mont. 1981), 634 P.2d 653, 658-59, 38

18

St.Rep. 1669, 1675, this Court held:

> "This court has not previously ruled on the question of whether punitive damages can be reduced by the percentage of plaintiff's contributory negligence. Since the purpose of punitive damages is to punish the defendant and not to compensate the plaintiff, we find that such an award bears no reasonable relationship to the plaintiff's conduct. Therefore, we hold that punitive damages cannot be reduced by the percentage of plaintiff's contributory negligence. This holding is supported by other jurisdictions. Amoco Pipeline Co. v. Montgomery (W.D.Okl. 1980), 487 F.Supp. 1268; Tampa Electric Co. v. Stone & Webster Engineering Corp. (M.D. Fla., Tampa Div., 1973), 367 F.Supp. 27."

The jury in this case awarded punitive damages in the sum of $100,000, in addition to compensatory damages.

The holding that the compensatory damage award may not be reduced by the percentage of plaintiff's negligence appears inequitable to me. If the defendant's conduct is "willful" or "wanton," the percentage of plaintiffs negligence will be determined to be much smaller in comparison, and a reduction in the compensatory award would be in line with the principle of comparative negligence, while leaving an award for punitive damages intact. Such a holding would prevent the plaintiff from profiting by his own negligence, but would preserve the policy of punishing "willful" or "wanton" acts.

In view of the majority holding that negligence and willful and wanton misconduct are different in kind, rather than degree, the Montana legislature may wish to resolve this problem, in the light of this Court's past planetary usage of words such as ordinary negligence, gross negligence, willful negligence, wanton misconduct, reckless,

19

heedless and malicious negligence.

I would find that the Montana legislature intended the apportionment of damages in cases involving acts of negligence which fall short of being intentional.

L. C. Gulbrandson
Justice

Mr. Justice John C. Sheehy, dissenting:

I dissent from the foregoing decision.

The majority returned this case to the District Court for further trial solely upon the grounds that the District Court erred in admitting evidence of prior instances when Lutey supplied minors with drinks, going to the issue of punitive damages. The effect of the majority view here is to adopt a strict rule as to the kinds of evidence that may be admitted to show the character, malice or disposition of a defendant and his willful disregard for the rights of others.

In my opinion, Lutey's supplying of beer to minors, particularly to Ray Derenberger, was part and parcel of the whole transaction that led to the grievous injuries that Ray Derenberger sustained. On the evening in question here, he had purchased beer with which to ply Ray Derenberger, and undoubtedly Raymond's senses were dulled by this criminal act of Lutey. It is relevant, therefore, in showing his malice and willful disregard for the rights of Derenberger, that he plied minors with liquor a month before the accident or the month after the accident without any showing of remorse by those acts for what he had done to Raymond Derenberger.

Punitive damages may be awarded by the jury against the defendant where he has been guilty of oppression, fraud or malice, such damages to be for the sake of example and by way of punishing the defendant. Section 27-1-221, MCA. Here, the majority limits the fact issues in this case to whether Lutey was driving the vehicle recklessly, at a high rate of speed and whether that action was willful and wanton misconduct. The majority ignores, however, a concomitant fact issue, that Derenberger's senses may have been dulled

when this sixteen-year-old was unlawfully plied with liquor in such a manner that he did not appreciate the danger of driving with Lutey. It was most certainly relevant to this issue that Lutey had acted in the same way on prior and succeeding occasions to show his wanton disregard for any minors that came within his influence. Certainly the jury was entitled to consider such evidence in determining the punitive damages.

This Court has usually held that it will leave the admission of evidence to the sound discretion of the trial court subject to review only in cases of manifest abuse. Cech v. State (1979), 183 Mont. 75, 604 P.2d 97; Pierce Packing Company v. John Morrell (9th cir. 1980), 633 F.2d 1362.

I would affirm the judgment of the District Court.

_____
John C. Sheehy
Justice

I concur with Justice Sheehy's dissent.

_____
Justice