No. 88-352

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

J. DARRELL JOHNSON,

Petitioner and Appellant,

-vs-

BOARD OF TRUSTEES, BEAVERHEAD COUNTY HIGH
SCHOOL DISTRICT,

Respondent and Respondent.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles A. Graveley, Helena, Montana

For Respondent:

W.G. 'Duke' Gilbert, III, Dillon, Montana
Poore, Roth & Robinson; Donald Robinson, Butte,
Montana

Submitted on Briefs: Feb. 3, 1989

Decided: April 6, 1989

Filed:

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

J. Darrell Johnson (Johnson) appeals the decision of the First Judicial District Court, Lewis and Clark County, affirming the County Superintendent's decision to dismiss him from his employment as a teacher with the Beaverhead County High School in Dillon, Montana. We affirm.

Appellant presents the following issues upon appeal:

1. Was the dismissal of appellant without good cause and therefore a wrongful violation of his rights as a tenured teacher?

2. Was appellant wrongfully deprived of his right to a de novo trial before the County Superintendent?

Appellant Johnson worked as an arts teacher with the Beaverhead County High School in Dillon from 1970 until August of 1984. In August of 1984, he was suspended pending a hearing before the Beaverhead County School Board (Board) regarding charges of sexual contact with two female students during the 1983-84 school year. The Board subsequently dismissed Johnson on March 21, 1985 for immorality and unfitness after a full hearing on the charges. Johnson appealed this dismissal to the County Superintendent, pursuant to §§ 20-4-207(5) and 20-4-205(2), MCA.

A full evidentiary hearing on the charges was conducted before the Acting County Superintendent, Wallace Vinnedge, on April 11 and 12 of 1985. Both parties agreed that the sole issue on appeal was whether the Board dismissed Johnson without good cause. Before rendering a decision, the County Superintendent considered all the evidence introduced at this hearing, the transcripts from the school board hearing, and the earlier videotaped testimony given by the two girls with whom Johnson allegedly engaged in sexual acts. The County

2

Superintendent then concluded the Board had good cause to dismiss Johnson and affirmed the Board's dismissal.

Johnson appealed this decision first to the State Superintendent of Public Instruction and then to the District Court. The County Superintendent's decision was affirmed in both of these reviewing forums. Johnson then filed this appeal.

A teacher in Montana who holds a valid employment contract may be dismissed prior to the expiration of the contract for "immorality, unfitness, incompetence, or violation of the adopted policies of such trustees." Section 20-4-207, MCA. In the present case, Johnson was dismissed for that immorality and unfitness apparent from his alleged sexual activity with two minor female students during the 1983-84 school year. If these factual findings of sexual activities are supported by the evidence, then the dismissal was indeed for good cause and not a violation of Johnson's rights as a tenured teacher under contract. We therefore turn to an examination of the facts upon which the County Superintendent based his conclusions of immorality and unfitness.

We note at the outset that the County Superintendent is the trier of fact in an appeal from a trustee decision dismissing a teacher under contract. Section 20-3-210(2), MCA; Yanzick v. School Dist. No. 23 (1982), 196 Mont. 375, 641 P.2d 431. The County Superintendent, as the trier of fact, had the ability to judge the credibility of each witness. Consequently, this Court has recently held that "neither the State Superintendent of Public Instruction nor the District Court may substitute its judgment for that of the County Superintendent on issues of fact." Trustees of Lincoln County School Dist. No. 13 v. Holden (Mont. 1988), 754 P.2d 506, 509, 45 St.Rep. 786, 789. A court upon review

3

of a dismissal action will reverse the factual findings of the County Superintendent only if they are clearly erroneous. Carruthers v. Board of Horse Racing (1985), 216 Mont. 184, 188, 700 P.2d 179, 181. As stated in § 2-4-704(2), MCA:

> (2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings . . . are:
>
> . . .
>
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . .

Having reviewed the entire record in the present case, we hold that the findings of fact issued by the County Superintendent are not clearly erroneous. Specifically, we hold that the following findings, which support a charge of immorality and unfitness sufficient to warrant a dismissal, are supported by reliable, probative and substantial evidence:

FINDINGS OF FACT

> . . .
>
> 3. That the Petitioner had admitted that he gave back rubs and placed his hands upon female students in a locked storage room during the 1983-84 school year. That such conduct is inappropriate and improper for a teacher.
>
> 4. That the Petitioner had, during the 1983-84 school year, engaged in acts of sexual contact with a Student under the

4

age of sixteen years at various places within Beaverhead County High School, during class periods, and at other times, which sexual contact amounted to sexual intercourse or attempted sexual intercourse.

5. That the teacher engaged in acts of sexual contact with an additional student . . . during school hours and on school premises during the 1983-84 school year, which contact consisted of fondling and kissing the students' breasts. That such conduct is improper for a teacher.

In regards to Finding No. 3, Johnson testified before the County Superintendent that he had rubbed the neck and shoulders of several female students who came to his art storage room to discuss personal problems. Moreover, Johnson plead guilty in May of 1985 to misdemeanor assault charges; he admitted that when a female student came to him for counseling toward the end of May, 1984, he "rubbed her back and held her in my arms, in what I felt was a consoling manner, but apparently to her it was an insulting nature." The two students with whom Johnson allegedly had sexual contact also testified that Johnson routinely gave them "back massages." The principal and assistant principal both testified that rubbing the neck and shoulders of a young female student in a locked room on school premises during school hours constituted improper teacher conduct.

Finding No. 4 involves the sexual contact and attempted sexual intercourse upon a 14-year-old freshman student (hereinafter K.B.) during the year preceding Johnson's dismissal. K.B. testified in great detail as to the progression of sexual activity occurring from November of 1983 until June of 1984. She stated that her initial physical contact with Johnson occurred in the art storage room at BCHS a few days before Halloween. She massaged his

5

back after he complained about back aches. Two weeks later in the same room, he rubbed her shoulders and back. She testified that a week or so later, he expanded his massage to include her chest, armpits and breast area. K.B. stated that shortly thereafter, he began slipping his hand inside her brassiere and cupping her breasts. She alleged this activity continued more or less on a daily basis during the week for the rest of the 1983-84 school year, generally during her fifth period Driver's Education class and occasionally at noon or after school. The three or four days each week when not driving or being tested, K.B. and two other girls (J.N. and A.P.) would obtain a pass from Johnson and then go down to the art room for the period. The testimony of K.B. is supported by the statement of A.P. that during fifth period, K.B. and Johnson often would leave the classroom for at least ten to fifteen minutes at a time. If A.P. or J.N. then needed assistance while Johnson was gone, they could usually find him and K.B. in the art storage room. Another student, in the fifth period art class that year, similarly testified that K.B. and Johnson would leave class together three to four days each week and that Johnson was usually gone from the classroom fifty percent of the period.

The sexual activity with K.B. allegedly escalated in late March or early April of 1984 to include frequent acts of sexual intercourse in the art storage room. K.B. further alleged that Johnson attempted sexual intercourse with her on a piece of plywood and cloth located in the basement underneath the girls gym in late April. K.B. testified that on the last day of May of 1984, Johnson again attempted sexual intercourse with her on a canvas tarp spread on the floor of the camera room above the auditorium. K.B. testified that her last sexual contact with Johnson occurred on June 18, 1984 in the art storage room.

Several types of circumstantial evidence exist which indicate that K.B. did in fact become involved in those sexual activities alleged. Deputy Sheriff Keith Reeder investigated the area under the gym in late summer and sent the red cloth and red coveralls found under the gym to the Missoula Crime Lab. An analysis of the hairs on the coveralls revealed several with characteristics similar to K.B.'s hair. The Deputy also collected a canvas from the camera room and sent hairs found on it to the Crime Lab. An analysis of the hairs from the canvas revealed one with characteristics similar to Johnson's hair and several with characteristics similar to K.B.'s hair. Additionally, respondent introduced three letters written by K.B. to her girlfriend T.B. (who lived in Idaho). These letters detailed her alleged sexual activities with Johnson. Moreover, Dr. Myers, a psychologist who met with K.B. nineteen or twenty times for individual therapy during the summer of 1984 in regards to this reported incident, stated his opinion that those incidents of sexual activity with Johnson detailed in K.D.'s letters were not fantasy.

Finding No. 5 involves the sexual contact in 1983-84 with a 16-year-old student (hereinafter J.N.). J.N. testified that her physical contact with Johnson occurred two to three weeks after she enrolled in BCHS in Dillon. While working in the ceramics room after school, Johnson came up and massaged her neck and shoulders. A few weeks later when she was in the art storage room during the class period, he requested her to massage his back and she did so. Shortly thereafter, she stated he began placing his hands inside her brassiere and massaging her breasts. She testified this activity escalated from one to three days per week to a nearly daily weekday activity. This sexual contact allegedly occurred in the art storage room generally after school or

during her ceramics or painting class period; J.N. testified they would be absent from the classroom for 30 to 45 minutes of the class period. J.N. testified that the last sexual contact with Johnson occurred three to four weeks before the end of the 1983-84 school year. She testified that she told him in letters and verbally that such activity was wrong and that she thereafter avoided him. She subsequently wrote a letter to another teacher, Russell Fisk, stating that Johnson had rubbed her neck and back and "one day went farther." Teacher Fisk confirmed his receipt of such a letter which he admitted contained "sexual implications." This letter was later passed on to school counselor Gwen Brott. Brott testified that she destroyed this letter. The misdemeanor assault charge, to which Johnson pled guilty, further indicates some physical contact occurred between Johnson and J.N. In his plea, Johnson admitted that in May of 1984 he had rubbed her back and held her in his arms to console her.

Appellant Johnson introduced a substantial amount of testimony by students and teachers alike in regards to his excellent teaching abilities, his caring nature, and as to the amount of time he was absent from classes each day. However, this Court is not charged with re-weighing the evidence to determine whether the dismissal was in fact made with good cause. Rather, we may only review the entire record to determine whether reliable, probative and substantial evidence existed to support the County Superintendent's decision dismissing Johnson. All the above-cited evidence is sufficient to meet this standard and to support the allegations of sexual activity. Such sexual activity by a 41-year-old married teacher with two of his minor female students indeed supports the conclusion of his immorality and unfitness. Further, a teacher is charged by statute with providing "moral and civic instruction" to students and with

8

"endeavoring to impress the pupils with the principles of morality, truth, justice, and patriotism." Section 20-4-301(1)(f), MCA. The evidence of Johnson's sexual activity with students indicates he failed to discharge these duties with which he was charged. We therefore hold good cause existed supporting Johnson's dismissal for immorality, unfitness and his failure to fulfill his duties as a teacher. The District Court did not abuse its discretion when it affirmed the County Superintendent's dismissal of Johnson.

Appellant's second argument is that he was wrongfully deprived of his right to a de novo hearing because the County Superintendent considered the transcripts and the videotaped testimony of K.B. and J.N. taken during the School Board hearing. Appellant contends a de novo hearing mandates a decision based only on those facts adduced at the hearing before the County Superintendent. We disagree.

Section 20-3-210(2), MCA requires a county superintendent to base a dismissal decision upon those facts established at the hearing conducted before him or her. This Court has interpreted this section as requiring a de novo hearing before a county superintendent. Yanzick, 641 P.2d at 437. When conducting this hearing, a county superintendent is governed by the rules set forth in § 2-4-612, MCA. Section 2-4-612(2) expressly allows a county superintendent to receive any part of the evidence in written form if the "hearing will be expedited and the interests of the parties will not be prejudiced substantially" by admission of such evidence.

The transcripts from the School Board hearing, as written evidence, were properly admissible under § 2-4-612(2), MCA because they did not substantially prejudice appellant and they did expedite a determination of the issue. The Board transcripts are largely duplicative of

that testimony given before the County Superintendent. They do not introduce any substantially new evidence. Additionally, the appellant had every opportunity to cross-examine those witnesses whose testimony was transcribed. Consequently, appellant may not claim substantial prejudice.

Admission of the transcripts, which included the testimony of K.B. and J.N., also helped expedite the hearing before the County Superintendent. The testimony of K.B. and J.N. was essential to a determination of the appeal. Yet, K.B. and J.N. were both unavailable to testify at the time of the second hearing. See 804(a)(5), M.R.Evid. This unavailability was not due to any wrongdoing by the respondent. Both girls had moved outside the State of Montana with their respective families after the 1983-84 school year. Respondent went through the formality of issuing subpoenas to the last known address of each girl within Montana to prove that service of process upon them was not possible within the State and to indicate respondent's inability to procure their attendance through process. Admission of the two girls' transcribed testimony prevented a delay of the hearing until the two girls could be present.

No statutory provision expressly provides for the admission of videotaped testimony in a de novo hearing such as that hearing conducted before the County Superintendent. Further, even if the videotape was properly admissible, it was not taken in compliance with the requirements found in Rule 30(h), M.R.Civ.P., a section providing those procedures mandated for videotaped depositions. However, we need not determine the issue of whether the admission of the videotape in this case was proper. Admission of the videotaped testimony did not substantially prejudice the appellant. The audio testimony of the two girls recorded on the videotape is

duplicated in the Board transcripts, which we have just held were properly admissible. The videotape does not introduce any new evidence without giving appellant an opportunity to cross-examine the witnesses. As previously noted in this opinion, appellant had the opportunity to fully cross-examine the two girls during the Board hearing. We therefore hold that neither admission of the videotaped testimony nor admission of the Board transcripts acted to deprive appellant of his right to a de novo hearing before the County Superintendent.

Having found that substantial, reliable and probative evidence indicated Johnson was dismissed for good cause and that appellant was properly afforded his right to a de novo trial, we affirm the judgment of the District Court upholding the decision by the County Superintendent to dismiss appellant.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11