NO.  93-116

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

HAZEL MARIE PHILLIPS,

       Petitioner and Respondent,

  v.

TRUSTEES, MADISON SCHOOL DISTRICT NO. 7,
and NANCY KEENAN, Superintendent of
Public Instruction,

       Respondents and Appellants.

FILED

JAN 28 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

           Charles E. Erdmann, Erdmann Law Office,
           Helena, Montana (for Madison School District)

           Kathleen Holden, Chief Legal Counsel,
           Office of Public Instruction, Helena,
           Montana (for Nancy Keenan)

       For Respondent:

           J. C. Weingartner, Attorney at Law,
           Helena, Montana

       For Amicus Curiae:

           Janice Frankino Doggett, Attorney at Law! Helena,
           Montana (for Montana School Boards Association)

           Emilie Loring, Attorney at law, Missoula,
           Montana (for Montana Education Association)

                 Submitted on Briefs:  September 2, 1993

                         Decided:  January 28, 1994

Filed:

                      Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

The Madison School District No. 7 Trustees (trustees), and Nancy Keenan, Montana Superintendent of Public Instruction (state superintendent), appeal from an order of the First Judicial District Court, Lewis and Clark County, reversing the state superintendent's decision concerning the termination of respondent, Hazel Marie Phillips, a Twin Bridges school teacher.

We affirm.

Did the District Court err when it reversed the state superintendent's decision, which had reversed the county superintendent's decision, on the grounds that the county superintendent considered evidence not available to the trustees?

In 1989, Phillips was a tenured English and Art teacher employed by the Madison School District for over 16 years. On or about January 3, 1989, the trustees passed a resolution declaring a school district financial emergency and authorized a ballot to consider a $103,020 emergency levy for the high school, and a $73,621 emergency levy for the elementary school. The voters defeated the levies. At a meeting on February 3, 1989, the trustees eliminated a number of programs including the English/Art program. On February 23, 1989, the trustees submitted a second proposed set of emergency levies at $38,884 and $47,277, of which the voters approved. On March 1, 1989, the trustees informed Phillips of the school superintendent's recommendation to eliminate her position in a reduction of force, due to the financial

2

emergency.  On March 22, 1989, at the hearing for Phillips and two other tenured teachers, the trustees voted to accept the school superintendent's recommendation that Phillips' teaching contract be terminated.

Phillips claimed that the school superintendent recommended her termination to the trustees because of a personality conflict between the two. On April 17, 1989, Phillips appealed the decision to the county superintendent.  On October 24, 1989, the county superintendent found that Phillips was unjustly terminated because of a personality conflict with the school superintendent, and not because of a financial emergency.  On November 22, 1989, the trustees filed an appeal to the state superintendent who affirmed the county superintendent on November 30, 1990.

On December 28, 1990, the trustees filed a petition for judicial review in the Fifth Judicial District Court, Madison County.  Subsequently, the parties determined that the record reviewed by the state superintendent was incomplete.  On February 19, 1991, by agreement and stipulation of the parties, the court remanded the case to the state superintendent with orders to obtain and review all the evidence presented by the parties to the county superintendent.

On June 27, 1991, the state superintendent reversed her first decision by reversing the decision of the county superintendent. The state superintendent found that on October 24, 1989, the county superintendent improperly weighed financial informationunavailable

3

to the trustees on March 22, 1989, when they decided to accept the school superintendent's recommendation that Phillips' contract be terminated.

On August 27, 1991, Phillips filed a petition for judicial review in the First Judicial District Court, Lewis and Clark County, asking the court to reverse the final order of the state superintendent and to reinstate the order of the county superintendent. On December 10, 1992, the First Judicial District Court found that because the hearing with the county superintendent was de novo, the county superintendent properly could consider any information before her, including the financial evidence admitted at the hearing without objection by the trustees. Further, the court found that the county superintendent's findings of fact were not clearly erroneous, and her conclusions of law were neither arbitrary nor capricious. Consequently, the District Court reversed the decision of the state superintendent and reinstated the county superintendent's decision that had reversed the trustees' decision to terminate Phillips* contract.

On January 25, 1993, the trustees and state superintendent filed this appeal.

Did the District Court err when it reversed the state superintendent's decision, which had reversed the county superintendent's decision, on the grounds that the county superintendent considered evidence not available to the trustees?

4

We agree with the First Judicial District Court. The District Court properly upheld the county superintendent's decision, after finding that it was supported by reliable, probative, and substantial evidence, and not clearly erroneous. Section 2-4-704(2)(a)(v), MCA. The court then properly determined that the hearing before the county superintendent was a hearing de novo. Johnson v. Beaverhead County High Sch. Dist. (1989), 236 Mont. 532, 771 P.2d 137; Yanzick v. School Dist. 23 (1982), 196 Mont. 375, 641 P.2d 431; Section 20-3-210(1) and (3), MCA. Because the county superintendent's review is de novo, the county superintendent could review any relevant issues of law or fact before her at the time of the hearing.

The county superintendent's findings of fact and conclusions of law reveal that in light of the trustees' claim of a financial emergency, she considered financial data regarding the school district's budget: "The Reserve account in the amount of $57,298.00 for the 1989-90 fiscal year was double the 1987-88 amount of $25,227.00 and triple the 1988-89 amount of $14,704.00." At the hearing, Phillips introduced an exhibit into evidence dated July 24, 1989, containing the 1989-90 high school budget of $57,298.71, for the year beginning July 1, 1989, and another financial summary dated August 2, 1989. Both of these summaries post-date March 22, 1989, the date on which the trustees voted to terminate Phillips' contract.

5

We hold that the proceedings before the county superintendent were de novo proceedings and she could properly consider all relevant evidence presented to her.

We affirm the District Court.

_____
                 Justice

We concur:


_____
        Chief Justice


_____


_____


_____
              Justices

6

Justice James C. Nelson specially concurs.

I concur in the result reached by this Court, although I do so while acknowledging the impossible position in which the statutory scheme places the board of trustees.

My frustration is primarily grounded in the anomalous situation ably discussed by the dissent regarding the use of evidence not available to the Trustees or in existence at the time of their decision, at the de novo hearing before the county superintendent. Under § 20-4-205, MCA, the board of trustees is required to make its teacher hiring decisions for the next school year at a time before final budgetary information is available under Title 20, Chapter 9, Part 1. As the respondents correctly point out in their brief on appeal:

> In good financial **times** this process generally works as districts can expect to receive increased state support and **some** growth in district taxable valuation. In troubled financial times, however, or where districts are experiencing declining enrollment, the trustees find themselves in a situation where they must make staffing decisions before they are aware of their final budget revenue figures. In these situations the trustees make the best decision they can with the available information.

Under that sort of statutory scheme, one can hardly fault the school board for planning programs and hiring teachers and staff very conservatively, especially when the board is increasingly faced with failed school levy elections, taxpayer revolts and **major** changes in school funding laws that seemingly follow each session of the legislature and each court challenge.

Notwithstanding, our school laws also provide that a teacher who **claims** that his or her teaching contract was, for an improper

7

reason, not renewed by the board of trustees, is entitled to a "de novo" hearing before the county superintendent. Sections 20-3-210, 20-4-204, MCA; Johnson v. Beaverhead Cty. Sch. D. (1989), 236 Mont. 532, 534, 771. P.2d 137, 138; Yanzick v. School District No. 23 (1982), 196 Mont. 375, 385, 641 P.2d 431, 437.

A de novo hearing is "[a] new hearing or a hearing for the second time, contemplating an entire trial in [the] same manner in which [the] matter was originally heard and a review of previous hearing. On hearing 'de novo' [the] court hears [the] matter as court of original and not appellate jurisdiction." Black's Law Dictionary 649 (5th ed. 1979).

In Rickett v. City of Billings (1993) __ Mont. P.2d , 50 St. Rep. 1586, 1586, we recently stated:

> Black's Law Dictionary (4th ed. 1968) 1677, defines trial de novo as "[a] new trial or retrial had in an appellate court in which the whole case is gone into as it no trial whatever had been had in the court below." Therefore, a district court must conduct the proceedings before it as if the case had originated in that court, following all statutes and rules governing district court proceedings. (Emphasis added).

Section 20-3-210, MCA, briefly describes the procedure by which the county superintendent conducts a hearing do novo. That section provides in pertinent part:

> (3) The county superintendent shall hear the appeal and take testimony in order to determine the facts related to the controversy and may administer oaths to the witnesses that testify at the hearing. The county superintendent shall prepare a written transcript of the hearing proceedings. The decision on the matter of the controversy that is made by the county superintendent must be based upon the facts established at the hearing.

Section 20-3-210(3), MCA. (Emphasis added.) Also, § 2-4-703, MCA,

8

provides that "the court may order that the additional evidence be taken before the agency upon conditions determined by the court."

In an Opinion of the Attorney General discussing whether a hearing before a county superintendent is an original proceeding with de novo consideration, the Attorney General stated that:

> The term "hearing" when used with reference to a proceeding is an equity term synonymous with "trial," and includes the reception of evidence and arguments thereon for the sake of deciding correctly thereon. Grant v. Michaels [(1933)], 94 Mont. 452, 461, 23 P.2d 266. Montana law thus has specified a de novo type proceeding upon appeal to the county superintendent, and not merely a review of a decision of a school board. An analogous situation is an appeal from justice court to district court. Although that proceeding is referred to as an appeal, it is a trial de novo and original proceeding. The decision rendered by the school board is not voided by full consideration of the controversy by the county superintendent, but <u>the board's decision is taken into consideration along with facts, documents and testimony presented at the hearing.</u>

35 Op. Att'y. Gen. No. 42 (1973). (Emphasis added.) The last sentence of the above paragraph implicitly contemplates that additional evidence may be presented at the county superintendent's level of hearing and review.

While the above authorities do not precisely address the relevance of post-termination evidence at the hearing <u>de novo</u>, and while the position taken by the respondents and by the dissent has logical appeal -- why should the school board's hiring decisions be second guessed on the basis of budget evidence <u>not even in existence</u> when the board was required to make its decisions? -- nevertheless, despite exhaustive research, I have located no persuasive authority which would preclude the use of that sort of evidence in a <u>de novo</u> proceeding, given the obligation of the

9

county superintendent to act as the initial fact finder in the controversy.

Moreover, the cited authorities do contemplate that on a hearing or trial de novo, that the evidence is to be presented "as if the case had originated in that [tribunal]" and "as if no trial, whatever, had been had in the [tribunal] below" and on the basis of facts, documents and testimony established and presented at the de novo hearing. Under those authorities, there is nothing to preclude the de novo finder of fact from considering relevant evidence that may not have been available to the first tribunal, given the requirement that the second hearing is an original, "from scratch" proceeding.

On de novo review, the tribunal or hearing officer (here the county superintendent) is entitled to hear all relevant evidence on the controversy at issue. See § 2-4-612, MCA, which makes Rule 402, M.R.Evid., applicable to administrative agencies. Rule 402, M.R.Evid., states that all relevant evidence is admissible, except where specific exceptions apply.

"Relevant evidence" is simply:

> ...evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence . . . [and] . . . may include evidence bearing upon the credibility of a witness or hearsay declarant.

Rule 401, M.R.Evid. Stated another way, the test of relevancy is:

> . ..whether an item of evidence will have any value, as determined by logic and experience, in proving the proposition for which it is offered.

Derenberger v. Lutey (1983), 207 Mont. 1, 9, 674 P.2d 485, 489.

10

Importantly, our rules of evidence do not qualify relevancy on the basis of when the evidence came into existence in relation to the matter at issue.

If, as in the instant case, the teacher claims that the non-renewal of her contract for lack of funds was merely a pretext, then **prohibiting** the use of relevant, post-termination evidence regarding the availability of funds might deprive her of one of the most probative pieces of evidence with which she can prove her case.

Moreover, on balance, it makes more sense to admit such evidence than to disallow it. If the evidence is admitted, the school board still has the ability to prove that its decision not to renew the teacher's contract was based solely on financial reasons and was not merely a pretext to justify a wrongful discharge. If, on the other hand, the evidence cannot even be considered, then the teacher is deprived of using the one piece of evidence that, along with other evidence, might prove that her allegations are correct.

Quite simply, if, as here, the statutory scheme forces a **Hobson's** choice, then, the hearing de novo, being, at its root, a search for the truth, we should err on the side of allowing more relevant information on the issue rather than less.

Accordingly, while acknowledging the well-reasoned and argued positions of the Trustees here, **the State Superintendent,** and the dissent, I must, nevertheless, concur.

_____
Justice

Chief Justice J. A. Turnage:

I concur in the specially concurring opinion of Justice Nelson.

_____
Chief Justice

12

I respectfully dissent from the opinion of the Court. I would reverse the District Court.

My disagreements with the Court are two. First, the Court does not address the District Court's threshold determination that the Trustees waived their objection to consideration of post-termination information by the County Superintendent. I would reverse the District Court on this issue because it is my view that the Trustees made a sufficient and, indeed, legally correct objection to the relevance of that information. While the record can be read narrowly to support the District Court's determination that no "objection" stated in such terms was made, I would read the record before us more generously under these circumstances where neither party raised or briefed the "objection/waiver" issue in the District Court.

It seems to me that a fair reading of the record indicates that the parties agreed to allow all the post-termination evidence into the record for purposes of the County Superintendent's hearing subject to objections in their post-hearing briefs. The Trustees then argued in their brief that the school district was unaware of what the reserve fund level ultimately would be at the time they were compelled to make their termination decision; in essence, I read that to be an objection to the post-termination evidence on relevance grounds. Certainly it appears that the parties so understood matters to and through the subsequent proceedings in the District Court during which Phillips did not raise an issue with regard to any waiver by the Trustees. For these reasons, I would

13

reverse the District Court's determination that the Trustees failed to object and thereby waived their right to object to use of the post-termination evidence.

Second, the Court's total lack of discussion of the significant issue before us for the first time in this case--namely, whether such post-termination evidence can be used by a county superintendent in reviewing a termination decision made by school district trustees--is troubling. While that discussion is ably provided in Justice Nelson's concurrence, the formal Court opinion is devoid of legal analysis of the issue.

On the merits of that critical issue--whether evidence not in existence at the time of the Trustees' decision can be used in reviewing that decision--I also disagree with the Court. The Court correctly states that hearings before a county superintendent of the kind at issue here are de novo hearings. The Court then proceeds to a conclusion that, because the hearing is de novo, any relevant issues of law or fact before the County Superintendent could be reviewed as if the Trustees' decision had never taken place. I agree with that conclusion as well. The crux of the issue, though, is precisely that raised by the Trustees--is evidence regarding the financial circumstances of the school district which did not exist at the time of the Trustees' decision "relevant" in reviewing that decision? The Court seems to conclude that it is, without specifically so stating and without discussion or citation to authority. I disagree.

It is my view that post-termination evidence--that is,

14

evidence which did not exist at the time a termination decision was statutorily required--is not relevant and, therefore, cannot be used by a county superintendent in reviewing a termination decision. While a county superintendent's hearing is de novo under our interpretations of § 20-3-210, MCA, that conclusion does not mandate or even suggest a conclusion that "facts" which did not exist at the time of the decision are relevant. The Trustees must act within statutory time frames and they must act based on information available at that point in time. To suggest that a decision made on the only information available properly can be reviewed at a later time by either the county superintendent, the state superintendent, or any court, based on an entirely different informational and evidentiary basis is without logic and puts school trustees in an untenable position.

Sections 20-3-210(1) and (3), MCA, provide in pertinent part:

[T]he county superintendent shall hear and decide all matters of controversy arising in the county as a result of decisions of the trustees of a district in the county.

. . .

The county superintendent shall hear the appeal and take testimony in order to determine the facts related to the controversy.

The "controversy" before the County Superintendent in this case was the validity of the Trustees' decision to terminate Phillips. Section 20-3-210(3), MCA, authorizes the County Superintendent to determine the "facts related to" that controversy. The related facts, I submit, can be only those which existed at the time the controversy came into existence, namely, the facts which existed

15

and which were available to the Trustees at the time they made their decision. To hold that later-existing "facts" relate, and thus are relevant, to an earlier decision, is to graft into substantive Montana law the kind of hindsight which each of us always hopes will not be used to judge our personal or professional decisions. I cannot agree.

_____
Justice

Justice Fred J. Weber concurs in the foregoing dissent.

_____
Justice