**Larry D. AVERY & Starr Renee Avery, husband and wife, Plaintiffs,**

v.

**INDUSTRY MORTGAGE COMPANY, et al., Defendants.**

**No. 1:00CV553.**

United States District Court, W.D. Michigan, Southern Division.

March 7, 2001.

Joel S. Gehrke, Carson City, MI, for Plaintiffs.

James H. Geary, Howard & Howard, PC, Kalamazoo, MI, Robert J. Christians, D. Andrew Portinga, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for Defendants.

*OPINION RE PLAINTIFFS'*
*OBJECTIONS TO R &*
*R*

HILLMAN, Senior District Judge.

This is an action alleging violations of the Michigan Consumer Protection Act ("MCLA"), MICH.COMP.LAWS § 445.903(n) and (bb). The action originally was filed in the Montcalm County, Michigan, Circuit Court and was removed to this court on grounds of diversity jurisdiction.

The matter presently is before the court on plaintiffs' objections to the Report and Recommendation ("R & R") filed by the magistrate judge recommending the court

grant the motion and amended motion of defendant Industry Mortgage Company ("IMC") to dismiss under FED.R.CIV.P. 12(b)(6) plaintiffs' claims for mental distress damages under the MCLA (docket ##5 and 7).

## I.

According to their complaint, plaintiffs Larry and Starr Avery executed a mortgage in the amount of $46,400 on certain real property located Montcalm County, Michigan, which they occupied as their home. They allege that defendant IMC, also known as Citifinancial Mortgage Company ("Citifinancial"), is their mortgagor holding an interest in the promissory note and mortgage. Citifinancial disputes the asserted relationship to IMC.

On November 3, 1997, a fire destroyed the Averys' home. Subsequently, the parties disputed the proper application of the insurance proceeds paid on the fire loss. Plaintiffs filed suit alleging that defendants in a variety of ways violated two subsections of the MCPA: (1) by "[c]ausing a probability of confusion or of misunderstanding as to the legal rights, obligations or remedies of a transaction"; and (2) by "[m]aking a representation of fact or statement of fact material to the transaction that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." MICH.COMP.LAWS §§ 445.903(n), (bb). Specifically, plaintiffs allege that IMC falsely misled plaintiffs regarding the existence of insurance coverage after the fire; it failed to disclose the existence of insurance coverage in response to Starr Avery's telephone call after the fire; it gave varied and confusing information to the Averys regarding the status of their mortgage account with IMC; it falsely declared that the Averys were in default while withholding setoffs and credits due to plaintiffs from the in-surance policy; and it threatened foreclosure through the use of unfair, deceptive and unconscionable correspondence.

Defendant IMC has brought the instant motion, in which Citifinancial has joined, asserting that plaintiffs' claims for noneconomic damages must be dismissed. The magistrate judge concluded that "actual damages" under the MCPA do not include non-economic damages. Plaintiffs have filed objections to the R & R.

## II.

### A. *Standards of Review*

This court reviews *de novo* those portions of an R & R to which objections are made. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b). The court may accept, reject or modify any or all of the magistrate judge's findings or recommendations. *Id.*

Under Fed.R.Civ.P. 12(b)(6), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.,* 135 F.3d 389, 405 (6th Cir.1998). A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied,* 5 510 U.S. 1177, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994).

## B. *Damages Under the MCPA*

Pursuant to the remedy provision of the MCPA,

> Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.

MICH.COMP.LAWS § 445.911. Defendants assert that the legislature's use of the terms "loss" and "actual damages" limits recovery under the MCPA to pecuniary losses and does not permit recovery of noneconomic compensatory damages such as mental distress.

The MCPA does not define either "loss" or "actual damages" under the act. This court therefore must interpret the meaning of the terms.

■ In determining the meaning of a statutory term, this court must assess the intent of the state legislature. In so doing, this court is bound by the construction of the state statute given by the highest court in the state. *See Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The federal courts also are bound by decisions of an intermediate state appellate court unless convinced that the highest state court would decide the issue differently. *See Olsen v. McFaul,* 843 F.2d 918, 929 (6th Cir.1988).

The Michigan Supreme Court has stated that "[w]hen determining legislative intent, statutory language should be given a reasonable construction considering its purpose and the object sought to be accomplished." *Lorencz v. Ford Motor Co.,* 439 Mich. 370, 377, 483 N.W.2d 844 (1992) (quoting *Wills v. Iron Co. Bd. of Canvassers,* 183 Mich.App. 797, 801, 455 N.W.2d 405 (1990)). This court is obligated to look to the object of the statute, the harm it is designed to remedy, and then apply a reasonable construction that best accomplishes the purposes of the statute. *See Marquis v. Hartford Accident & Indem.,* 444 Mich. 638, 644, 513 N.W.2d 799 (1994).

Michigan courts have held that the "clear legislative intent of the MCPA is to protect consumers in the purchase of goods and services." *Forton v. Laszar,* 239 Mich.App. 711, 715, 609 N.W.2d 850 (2000). The MCPA is a remedial statute "designed to prohibit unfair practices in trade or commerce and must be liberally construed to achieve its intended goals." *Id.; see also Price v. Long Realty, Inc.,* 199 Mich.App. 461, 470–71, 502 N.W.2d 337 (1993).

■ Defendants contend that because the MCPA permits recovery only when a person has experienced a "loss," this court should conclude that the legislature intended to permit recovery only for pecuniary losses. Defendants argue that in the Whistleblowers Protection Act, MICH.COMP. LAWS § 15.363, and the Elliott–Larsen Civil Rights Act, MICH.COMP.LAWS 37.2801, the legislature provided for the recovery of damages "for injury or loss." Defendants assert that by using only the language of "loss" in the MCPA, the legislature implied that it intended to allow narrower relief than that permitted under the WPA or Elliott–Larsen act.

I disagree. The remedy of the MCPA, is not a parallel statute with the WPA and Elliott–Larsen Act, two statutes providing relief for employment torts. No part of the statute uses language similar to the cited statutes, and no evidence exists that the legislature considered the WPA or Elliott–Larsen in fashioning its remedy under the MCPA. The simple failure to include the word "injury" does not demonstrate an intent to distinguish the remedies available. Presumably, had the legislature so intended, it could clearly have demonstrated its intent to narrow

ordinary tort damages in recoveries under the MCPA.

Moreover, at least one Michigan court has interpreted the meaning of "loss" under the MCPA. In *Mayhall v. A.H. Pond Co., Inc.,* 129 Mich.App. 178, 183, 341 N.W.2d 268 (1983), the Michigan Court of Appeals expressly considered the meaning of the term "loss" under both the MCPA and the Michigan Pricing and Advertising Act ("PAA"). The court held that "by specifying ... that in order to bring a suit a plaintiff must suffer a "loss" as a result of the statutory violation, the Legislature, we conclude, has incorporated in the acts the common-law requirement of injury." *Mayhall,* 341 N.W.2d at 270. I agree with the analysis and holding of *Mayhall.* Accordingly, I find no meaningful evidence that by using the word "loss" the legislature demonstrated an implicit intent to limit remedies.

Defendants next argue that "actual damages" under the MCPA are limited to pecuniary losses. In the R & R, the magistrate judge accepted defendants' argument and concluded that "actual damages" under the statute does not include noneconomic damages.

No Michigan court has defined what damages are recoverable as "actual damages" under the MCPA. However, in *Phillips v. Butterball Farms Co., Inc.,* 448 Mich. 239, 251 n. 32, 531 N.W.2d 144 (1995), the Michigan Supreme Court reiterated well established Michigan law that "[i]n tort cases, 'actual damages now include compensation for mental distress and anguish.'" *Id.* (quoting *Veselenak v. Smith,* 414 Mich. 567, 574, 327 N.W.2d 261 (1982)). The *Phillips* court specifically held that damages for violation of the WPA permitted recovery of full compensatory damages, including mental distress damages. In so ruling, the court contrasted the differences in the damages available in contract actions and those available in a tort cases. The court distinguished *Valentine v. General American Credit, Inc.,* 420 Mich. 256, 362 N.W.2d 628 (1984) (holding that mental distress damages are not available for breach of an employment contract), and *Kewin v. Massachusetts Mutual Life Ins. Co.,* 409 Mich. 401, 419, 295 N.W.2d 50 (1980) (holding that emotional distress damages are not available in an action for breach of contract unless it can be reasonably said that such damages were contemplated by the parties at the time that the contract was made). The court noted that where the "action sounds in tort, the available 'damages are not limited by contract principles.'" *Phillips,* 531 N.W.2d at 149 (quoting *Wiskotoni v. Michigan Nat. Bank–West,* 716 F.2d 378, 388 (6th Cir.1983)). Rights arising from a breach of a private agreement, which sounds in contract, are distinct from those arising from a breach of statutory duty, which sounds in tort. *Phillips,* 531 N.W.2d at 147.

In *Phinney v. Perlmutter,* 222 Mich. App. 513, 564 N.W.2d 532, 547 (1997), the Michigan Court of Appeals applied *Phillips* to a fraud claim, concluding that mental distress damages are recoverable in fraud cases whenever such damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated. *Id.* In MCPA cases involving claims of material misrepresentation, as in cases under the PAA, Michigan courts have analogized claims to those involving the common-law tort of fraud. *See, e.g., Zine v. Chrysler Corp.,* 236 Mich. App. 261, 283, 600 N.W.2d 384 (1999); *Mayhall v. A.H. Pond Co., Inc.,* 129 Mich. App. 178, 183, 341 N.W.2d 268 (1983). On the basis of *Phinney,* therefore, noneconomic damages are recoverable whenever they are determined to be the legal and

natural consequences of a wrongful act and reasonably could have been anticipated.

Defendants, however, cite *Pantelas v. Montgomery Ward & Co., Inc.,* 169 Mich. App. 273, 425 N.W.2d 782 (1988). *Pantelas* involved claims under the PAA, MICH. COMP.LAWS § 445.351, *et seq.,* which, like the MCPA, permits recovery of "actual damages" for breach. The *Pantelas* court held that on the facts of that case, the PAA did not permit recovery of mental distress damages. The *Pantelas* court reasoned that because the PAA was analogous to fraud, and because such damages ordinarily were not available as a remedy for fraud, the PAA was not meant to permit recovery of mental distress damages. *Id.* at 783.

The *Pantelas* decision, however, does not control this case and the *Phinney* court expressly distinguished and limited the holding in *Pantelas.* First, the *Phinney* court held that the *Pantelas* discussion of the damages available in common-law fraud was dicta. Second, the *Phinney* panel noted that if the *Pantelas* discussion of fraud damages were not dicta, it would fall to follow earlier Michigan precedent permitting recovery of such damages in fraud cases. *Id.* (citing *Clemens v. Lesnek,* 200 Mich.App. 456, 463–64, 505 N.W.2d 283 (1993)). Third, the *Phinney* court noted that the *Pantelas* case did not address a situation in which the defendant had engaged in an intentional wrong. Instead, the defendant had negligently violated the PAA by not having a sufficient quantity of advertised paint rollers in stock at the time of advertisement. The *Phinney* court reiterated that "[a]ctual damages in Michigan, particularly when an intentional wrong is involved, ... include damages for emotional stress, embarrassment and humiliation." *Id.* (quoting *Shaw v. Cassar,* 558 F.Supp. 303, 311 (E.D.Mich. 1983)).

I am unpersuaded that *Pantelas* serves as persuasive authority prohibiting mental distress damages in this case brought under the MCPA. The holding of *Pantelas,* to the extent it is interpreted as a blanket prohibition against recovery of mental distress damages in all PAA actions, is severely undermined by the subsequent decision of the Michigan Supreme Court in *Phillips,* which holds that emotional distress damages generally are available in tort cases. The case also is undermined by the decision and reasoning in *Phinney.* Finally, the *Pantelas* case on its face presented a situation in which mental distress damages were unreasonable. The only alleged injury was plaintiff's disappointment in being able to purchase a particular paint sprayer at a particular point in time.

I am satisfied that the magistrate judge correctly concluded that the *Phinney* case sets forth the present standard under Michigan law for recovery of mental distress damages in fraud claims. The magistrate judge erred, however, in his interpretation and application of *Phinney.* The magistrate judge improperly concluded that *Phinney* barred the award of noneconomic damages as the legal and natural consequences of the wrongful act unless the relationship of the parties is "not strictly one of business."

In holding that noneconomic damages were recoverable on the facts of the *Phinney* case, the court repeated the trial court's observation that the case involved a relationship that was "not strictly one of business." The court stated that "in the context of such a relationship, emotional distress reasonably might have been anticipated as a legal and natural consequence of [defendant's] actions." *Id.* at 546, 564 N.W.2d 532.

The quoted language does not suggest that the sole basis for determining whether such damages are the legal and natural

consequence will turn on whether the relationship is deemed to be "not strictly one of business." Instead, the *Phinney* court was merely affirming the trial court's conclusion that such a relationship may give rise to a finding that noneconomic damages are proper. In other words, the *Phinney* court did not hold that a finding that a relationship is "not strictly one of business" is the *sine qua non* for recovery of noneconomic damages.[1] Instead, the court expressly held that the "focus is on whether, under the circumstances of the case, damages are the legal and natural consequences of the wrongful act and reasonably might have been anticipated." *Id.* at 546 n. 2, 564 N.W.2d 532.

I am satisfied that a determination whether noneconomic damages are available must be based on the application of the standard articulated by the *Phinney* court: whether the damages are the legal and natural consequences of the wrongful act and might reasonably have been anticipated. As a result, the availability of mental distress damages will turn on the facts of each case and ordinarily will be a question for the jury to determine, unless no genuine dispute exists that such damages could not naturally flow from the type of breach alleged. In the instant case, the allegations in the complaint clearly set forth conduct that, if believed, could support a factfinder's conclusion that mental distress would be a natural consequence of the action that could reasonably be anticipated.

### III.

For the foregoing reasons, the court rejects the recommendation of the magistrate judge to dismiss plaintiffs' claims for noneconomic damages. Accordingly, the motion to dismiss plaintiffs' claims for noneconomic damages pursuant to FED. R.CIV.P. 12(b)(6) (docket ##5 and 7) is **DENIED.**

### ORDER

In accordance with the opinion filed this date,

**IT IS ORDERED** that the motion to dismiss plaintiffs' claims for noneconomic damages pursuant to FED.R.CIV.P. 12(b)(6) (docket ##5 and 7) is **DENIED.**

---

**1.** Moreover, I reject any suggestion that, as a matter of law, the relationship alleged between these parties is "strictly one of business." Instead, plaintiffs allege unconscionable and tortious business practices. The fact that a tort occurs during the course of a business relationship does not as a matter of law reduce the relationship to "strictly one of business." The action here does not arise out of a contract dispute alone. It arises out of allegedly illegal and unconscionable tortious conduct independent of any contract between these parties.